## AMERICAN CREDIT–INDEMNITY CO. OF NEW YORK v. E. R. APT SHOE CO.

### No. 2933.

Circuit Court of Appeals, First Circuit.

Dec. 19, 1934.

Jonathan Piper, of Concord, N. H. (Demond, Woodworth, Sulloway & Rogers, of Concord, N. H., on the brief), for appellant.

Robert W. Upton, of Concord, N. H. (John H. Sanders and Laurence I. Duncan, both of Concord, N. H., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

This was an action upon a policy of credit insurance issued by the appellant to the appellee. There was a verdict for the plaintiff, and the defendant has appealed. We shall refer to the parties, plaintiff and defendant, as they appeared in the lower court. There are 124 assignments of error, a plainly unreasonable number considering the character of the case and the questions involved. We shall consider only such points as appear to us to have sufficient substance and importance to warrant discussion.

The policy in suit, as to the issue and delivery of which no question is made, was in effect—though not in precise terms—a renewal of a previous policy and covered the period from September 1, 1931, to August 31, 1932, inclusive. Owing to delay in negotiations for it, the renewal application was not signed by the plaintiff until October 27; but the policy when issued took effect as of September 1. The representations and warranties in the application for the preceding policy were by reference made part of the

present policy which was issued in consideration of the two applications and of a money premium of $2,162. It insured the Shoe Company to the amount of $35,000 against losses due to insolvency of debtors to whom the Shoe Company had sold shoes in the usual course of business. The term insolvency was defined in the policy; no question arises upon it. The principal defenses were: (1) That the policy was procured by misrepresentations in the application for it; (2) that it was avoided by breaches of warranty and of condition after its issue; and (3) that certain losses on which the judgment below in part rests were not within the coverage of the policy.

The statements in the applications relied on by the defendant as misrepresentations or breaches of warranty, or as excluding the items in question from the coverage of the policy, were as follows:

(1) "Our outstandings amount to $150,-000 (Approx.) on Forsythe ($40,000 Approx.) Amount of outstandings past due. $ Approx. 5% (of which $ none is more than 60 days past due.)"

(2) "Our answers to the following questions are true: * * * 5. What are your regular terms of sale? 5-7 per cent. 30-60 days, net 90 days. What are your longest terms of sale, including dating? 90-100. * * *"

(3) 9. "Have you within the past year made, or do you contemplate making, any change in the articles or commodities dealt in, or in the manner of conducting your business, terms of sale or territory mentioned above, or proportion of sales to Manufacturers, Jobbers, or Retailers? None."

(4) "We agree that no loss shall be covered by the policy that arises from an account sold on longer terms than 90–100 days, including dating."

The defendant contended that each of these representations was untrue and was knowingly false; that each of them was material to the risk, and the policy was thereby avoided; and that losses which occurred on credits longer than 90–100 days were not within the coverage of the policy. The defendant further contended that certain sales involving losses on which the judgment against it is in large part based were not "made in the usual course of business."

The policy provided that the plaintiff should not take any action with respect to a debtor's account "which would operate in any manner against its prompt collection"; and the defendant contended that this provision

as well as the one above quoted (4) with reference to terms including dating longer than 90 to 100 days, had been broken by the plaintiff.

■ The principal controversy between the parties centered around the loss which the plaintiff sustained by the failure of the Forsythe Shoe Company in March, 1932. The basic facts are for the most part not in dispute. The plaintiff was a manufacturer of ladies' shoes; the Forsythe Company was a large customer of the plaintiff. By the policy the defendant insured the Forsythe account to the amount of $35,000. In connection therewith the defendant appears to have made a pretty careful investigation of the Forsythe situation through representatives who reported to its home office. They informed the defendant that the Forsythe "account will run from $150,000 to $175,-000"; that the plaintiff sold to the Forsythe Company on credit to an amount sometimes as high as $175,000; that the credit terms to Forsythe were trade acceptances running some times as long as 90 days; "that some months the entire account is paid in cash; other months there is a cash payment for part and the balance paid by trade acceptances. If they are in a heavy month Mr. Apt (the plaintiff) may take trade acceptances for the entire month's business. Usually the trade acceptances are short terms and it is very rarely they will run as long as 90 days." These statements were substantially accurate and fairly described the course of business between the plaintiff and the Forsythe Company. The jury was certainly warranted in finding that the plaintiff practiced no intentional deception with reference to the Forsythe account.

The crucial question was whether, on all the evidence, fraudulent or material misrepresentation, or breach of warranty or of conditions of the policy was so established that the defendant was entitled to a directed verdict. The trial judge submitted to the jury the question whether there had been any fraud or intentional misrepresentation by the plaintiff; and he instructed the jury that "if you find that the plaintiff in making out the applications acted in entire good faith according to what it understood was required by the questions propounded, that it made full, direct and honest answers without evasion or fraud, then you will return a verdict for the plaintiff. But if, on the other hand, you find that the plaintiff did not act honestly in making the representations which you find in the applications for the policy, or

that it has been guilty of fraud, misrepresentation or concealment, then your verdict will be for the defendant." This amounted to a ruling that on all the evidence no defense had been made out unless fraud was shown.

Turning to the alleged misrepresentations, the first point of defense was that the plaintiff's total "outstandings" amounted at the time of the application to about $175,000 of which about $44.000 was due from Forsythe, whereas in the application they were stated as "$150,000 (Approx.)" and on Forsythe "$40,000 (Approx.)" We think the presiding judge was right in ruling that this difference, if the statements were made in good faith, was not sufficient to avoid the policy. In stating its outstandings, however, the plaintiff did not include accounts receivable for which trade acceptances had been taken. These amounted to $136,000 more, of which $120,000 were those of the Forsythe Company. They were all paid at maturity and no loss appears to have occurred on them. At the time when the application was made the plaintiff did not hold any of these trade acceptances. It had discounted them at banks or passed them on to its creditors in payment of its own obligations—of course indorsing them.

The defendant contends that the acceptances came within the meaning of "outstandings" in the application for the policy, and as they were omitted and amounted to a substantial sum, there was, as a matter of law, a material misrepresentation of the risk which even if unintentional avoids the policy. On this point the District Judge ruled that the representation in question was material, "and if false and dishonestly made would render the policy void." He further said on this point: "The contention of the plaintiff is that the term 'our outstandings' as used in the policy does not include indebtedness of the applicant's customers to third persons on trade acceptances which had been given to the applicant and cashed at banks or turned over to others for value in payment of applicant's bills. Now if you find that this was the interpretation of the word 'outstandings' put on it when the application was made and the signer of the application honestly believed that this was the information called for, then, of course, you might find that no fraud in fact was intended and that the Apt Shoe Company was not guilty of fraud in that respect."

The word "outstandings" appears not to be defined in the policy or the application. The question whether accounts for which trade acceptances had been taken came within the meaning of "outstandings" as used in the application was one of law for the judge to decide. The trade acceptances when received amounted to conditional payment; but when the plaintiff indorsed and negotiated them it received cash or the equivalent of cash for the goods sold. In that situation, which is the one to which the inquiry as to the amount of outstandings related, we are of opinion that the plaintiff was not called upon to include sales of goods for which trade acceptances had been taken which had been negotiated by the plaintiff. Nothing was then owed to it on these sales, and the obligation of the Forsythe Company in respect of them ran to the holder of the trade acceptances, not to the plaintiff. It would seem quite incorrect to refer to them as outstanding accounts due. Moreover, the defendant, as has been said, was informed during the negotiations for the policy that it was the plaintiff's custom to take trade acceptances in large amounts from the Forsythe Company. If the defendant desired information as to the amount of them, it should have made an inquiry covering the point—as one of its auditors in effect suggested on his examination of the matter after the loss. The case is an apt illustration of the rule that papers prepared by an insurance company, the meaning of which is doubtful, will be construed most strongly against it. Aschenbrenner v. U. S. F. & G. Co., 292 U. S. 80, 54 S. Ct. 590, 78 L. Ed. 1137. The District Judge defined "outstandings" too broadly; they do not include negotiated acceptances. But his error in this respect was not prejudicial to the defendant because the ruling was against the plaintiff requiring to prove that its representations as to outstandings though thus increased was made in good faith and without fraud.

The defendant further contends that there was misrepresentation as to the terms of sale allowed by the plaintiff, above stated and in the statement by the plaintiff, that since the application for the prior policy, "it had made no change and it did not contemplate making any change in the manner of conducting our business, terms of sale, etc." The District Judge ruled that this representation was material, but that there was no evidence warranting a finding that it was false.

The principal ground on which it is urged that this was misrepresentation is that on September 3, 1931, the plaintiff offered to the Forsythe Company a January 1, 1932,

dating on all goods sold before that time if business was bad during the fall season and they did not sell shoes as quickly as they anticipated. No such dating was in fact ever requested or given. The evidence did not show any contract between the plaintiff and the Forsythe Company with respect to such dating. The Forsythe Company appears to have been under no obligation to buy of the plaintiff, nor the plaintiff to sell to it; each sale being an independent transaction requiring agreement between them as to its terms. The plaintiff's offer was evidently made to stimulate and encourage a prospective customer if the business outlook should become unfavorable. For all that appears the plaintiff was not bound to keep the offer open; it could withdraw it at any time and refuse such dating. The offer was made on September 3 more than six weeks before the application in question was signed. As nothing had up to that time been done under the offer, the plaintiff may have regarded it as lapsed or may have decided not to keep it open any longer. The point is a pure technicality and we think an unmeritorious one.

■ The defendant also contends under this clause and the agreement above referred to that the taking of trade acceptances extended the time of credit beyond that stated. Most sales were made by the plaintiff on 30 days' time, none beyond 90 days. The alleged extensions beyond "90 to 100 days" were due to the taking of trade acceptances when the bills fell due. The acceptances ran various lengths of time from 30 to 90 days. Obviously, a ninety-day acceptance plus 30 days' credit would operate to extend the time of payment beyond 100 days. The defendant was, as has been said, fully informed as to the plaintiff's custom in this particular; and the policy is to be read in the light of that information. The question asked was about the "longest terms of sale"; the agreement in the policy relates to the same thing. There was no change in the plaintiff's method of doing business in this particular after the policy was issued. The defendant contends that the representation and the agreement should be understood as including the time of the acceptance within the 100 day limit—a rather narrow point on which to avoid a policy. On this point the District Judge instructed the jury:

"What the parties contemplated on September 3, when no policy was in force does not necessarily prove what was in their minds on October 27, when the application was signed. Nothing happened, no datings were given; and the usual course of business went on unchanged.

"If the letter of September 3 was intended as the confirmation of a contract, it was never carried out and it does not appear that the Forsythe Company ever complained of its breach, neither does it appear that on October 27, either party had any intentions of enforcing its terms. To hold that the facts surrounding the letter of September 3 voided the plaintiff's policy from the beginning would be to give the insurance company the advantage of voiding the policy for a cause which really never existed."

This amounts to a ruling that as a matter of law this defense was not made out. In our opinion the ruling was correct. The application and the policy are susceptible of the meaning which the plaintiff in good faith put upon them. Here again doubt as to the meaning must be resolved against the defendant. It would be quite unfair to the plaintiff to avoid the policy because the plaintiff in good faith misunderstood an ambiguous question in the application prepared by the defendant, if the plaintiff answered the question truthfully as it understood it, and the defendant was informed of the facts.

■ The next contention is that the plaintiff violated the provision in the policy which allows recovery only if the plaintiff has "not taken any action * * * with respect to a debtor's account * * * which would operate in any manner against its prompt collection etc." The alleged violations consisted in the taking of trade acceptances as above described. There being no question as to the language of the policy or as to the facts, the question is one of law. In view of the full information which the defendant had as to the plaintiff's method of doing business and its customary use of trade acceptances, we think it cannot have been the understanding of the parties that the taking of trade acceptances was a violation of this clause.

■ As to the exceptions on evidence, it was plainly open to the plaintiff to show all information as to the business methods of the plaintiff which was brought to the defendant's attention; and it was proper to do so by letters brought to the attention of its managing officials.

As to the other assignments of error: As has been said, the defendant's position was, and is, that it was entitled to a directed verdict because the undisputed facts established material misrepresentations or breaches of conditions of the policy. It does not com-

plain of any failure to submit questions of fact to the jury. As a practical matter the defense depended on the interpretation of the policy and the applications with respect to "outstandings" and "trade acceptances." As these basic questions have been decided, it it unnecessary to discuss the many assignments of error which rest on a different construction of the documents. We have examined these assignments of error and find nothing in them which seems to us to be prejudicial error or to require comment.

The judgment of the District Court is affirmed, with interest and costs.

WILSON, Circuit Judge, concurs in the result.