702 F.Supp. 761 (1988)
Forrest D. CRIGER, Plaintiff,
v.
General Julius W. BECTON, Jr., etc., Defendant.
No. 88-569C(1).
United States District Court, E.D. Missouri, E.D.
December 29, 1988.
*762 Allen Surinsky, Clayton, Mo., for plaintiff.
Eric Tolen, Asst. U.S. Atty., St. Louis, Mo., Brenda Goranflo, Office of Gen. Counsel, Federal Emergency Management Agency, Washington, D.C., for defendant.

MEMORANDUM
NANGLE, Chief Judge.
Plaintiff Forrest Criger brought this action, pursuant to the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001-4127, to obtain judicial review of the Federal Emergency Management Agency's denial of insurance coverage for flood damage to his property, which occurred in October, 1986. Defendant has filed a counterclaim seeking recovery of money paid to plaintiff for a February, 1985, flood loss.

Findings of Fact
1. Defendant General Julius W. Becton, Jr., is Director of the Federal Emergency Management Agency (FEMA). FEMA administers the National Flood Insurance Program (NFIP) under the National Flood Insurance Act.
2. Plaintiff Forrest Criger had a Standard Flood Insurance Policy (SFIP) issued by the NFIP on his home which is located in St. Charles, Missouri, on the Mississippi River. Plaintiff's property was flooded on or about October 7, 1986. (Plaintiff's Exhibit 29).
3. Plaintiff purchased the dwelling in 1975. During the early 1960's, the original structure was moved closer to the river, substantial improvements were made, and the lower level was enclosed. (Plaintiff's Exhibit 1; November 11, 1988, Affidavit of Florence Harkins).
4. An independent adjusting company, Appalachian Adjusting Company, inspected plaintiff's property and filed reports dated October 29, 1986, and November 2, 1986, with the NFIP. (Government Exhibit C).
5. The NFIP notified plaintiff in a December 11, 1986, letter that it accepted the *763 proof of loss for the purpose of meeting the filing date, but rejected the statements therein with respect to the amount of the loss. (Government Exhibit C).
6. Plaintiff's property was reinspected on February 9, 1987. The reinspection report dated February 12, 1987, indicated that plaintiff's residence was an elevated structure. (Government Exhibit F).
7. Defendant denied plaintiff insurance coverage for the October, 1986, flood damage on the basis of an elevated structure exclusion in the SFIP.
8. At plaintiff's request, an adjuster from Joseph P. Caulfield, Public Adjuster, inspected plaintiff's property and filed a report on March 18, 1987. The company estimated that the structural and personal property damage to plaintiff's home as a result of the flood was $12,781.60 less $345.00 depreciation and plaintiff's $1,000.00 deductible. (Plaintiff's Exhibit 29; Testimony of Charles Ehret).
9. Defendant paid plaintiff $3,344.46 for a previous flood loss which occurred in February, 1985.

Conclusions of Law
This Court has subject matter jurisdiction over plaintiff's claim pursuant to 42 U.S.C. § 4072 which provides for judicial review of FEMA's denial of flood insurance claims. It is well established that claims arising under the NFIP are governed by federal common law. Sodowski v. National Flood Insurance Program, 834 F.2d 653, 655 (7th Cir.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); Brazil v. Giuffrida, 763 F.2d 1072, 1074-75 (9th Cir.1985); United States v. Parish of St. Bernard, 756 F.2d 1116, 1121 (5th Cir.1985), cert. denied, 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986); Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 135 (1st Cir.1984).
When Congress enacted the National Flood Insurance Act, it created the NFIP, a federally subsidized program, to provide flood insurance to property owners at affordable rates. Congress found that "flood disasters [had] created personal hardship and economic distress" requiring "unforeseen disaster relief measures ..." 42 U.S.C. § 4001(a). Because flood insurance generally was not available through the private sector, flood victims had to depend on the federal government and voluntary relief agencies to provide assistance. H.R.Rep. No. 1585, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2873, 2966. The NFIP was designed to meet the "national need for a reliable and comprehensive flood insurance program" and "to provide adequate indemnification for the loss of property" due to flood disasters. S.Rep. No. 583, 93rd Cong., 1st Sess., reprinted in 1973 U.S. Code Cong. & Admin.News 3217, 3218. Congress authorized a plan under which flood insurance could be provided to residential and small business properties "on a nationwide basis through the cooperative efforts of the Federal Government and the private industry." 42 U.S.C. § 4001(d)(1).
Under the National Flood Insurance Act, Congress delegated authority to the Director of FEMA to promulgate regulations setting forth the general terms and conditions of flood insurance coverage. 42 U.S. C. § 4013(a). Insurance provided under the NFIP is subject to the terms of the SFIP. The SFIP is published as part of the administrative regulations at 44 C.F.R. Ch. 1, Pt. 61, App. A(1). On October 1, 1983, the SFIP was amended to exclude coverage for enclosures and contents below the elevated floor of an elevated structure.[1]
*764 Plaintiff argues that the elevated structure exclusion is vague, discriminatory and unenforceable, defendant is estopped from claiming plaintiff's structure is elevated because defendant previously treated plaintiff's residence as a nonelevated structure and paid for plaintiff's February, 1985, flood loss, and the elevated structure exclusion is not applicable because plaintiff's residence is an initial construction under FEMA's Interpretation No. 1-87. The Court need not reach plaintiff's contentions because the Court determines that plaintiff is entitled to insurance coverage under a new regulation promulgated by FEMA.
FEMA promulgated a regulation, effective October 1, 1988, which amends the SFIP to make the elevated structure exclusion applicable only to elevated Post-FIRM buildings and not to elevated Pre-FIRM buildings. 53 Fed.Reg. 27989 (1988). Post-FIRM buildings are those buildings which were constructed or substantially improved on or after the effective date of the initial Flood Insurance Rate Map (FIRM) for the community or after December 31, 1974, whichever is later. Pre-FIRM buildings are those which were constructed or substantially improved prior to the relevant date. The effective date of the initial FIRM for the community of St. Charles County, where plaintiff's property is located, was September 15, 1978. (November 2, 1988, Declaration of Brenda Goranflo). Plaintiff's residence, which was substantially improved and enclosed in the early 1960's, clearly falls within the definition of a Pre-FIRM structure.
In the new regulation, FEMA recognized the unfairness of applying the elevated structure exclusion to Pre-FIRM elevated structures. FEMA noted that the 1983 limitation provided flood insurance coverage to nonelevated Pre-FIRM buildings but did not provide such coverage to elevated Pre-FIRM buildings, even though both structures were constructed in compliance with the then existing building ordinances. Id. at 27990. FEMA indicated that the new regulation was designed to "correct an unintended disparity in flood insurance coverage" for the two structures. Id. at 27989. With respect to the applicability of the new regulation to losses which occurred before the effective date of the regulation, FEMA stated that losses "would be adjusted on the basis of current policy provisions." Id. The new provisions were incorporated into the SFIP. Id. at 27991.
The new FEMA regulation came to the Court's attention while this case was before the Court for resolution following the non-jury trial. Thus, the Court instructed the parties to submit post-trial briefs on the issue of whether the new rule should be applied to the present action.
Defendant vigorously argues that the amendments set forth in the new regulation, like a legislative enactment, should be given prospective effect only.[2] Although statutes and administrative rules should normally be given prospective effect only, unless retroactive application is clearly indicated, see e.g., Greene v. United States, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964); Bruner v. United States, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952); Union Pacific R.R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913), the court must "apply the law in effect at the time it renders its decision" absent manifest injustice or a contrary legislative intention. Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); see Hamling v. United States, 418 U.S. 87, 102, 94 S.Ct. 2887, 2809, 41 L.Ed.2d 590 (1974); Seniors United for Action v. Ray, 675 F.2d 186, 189 (8th Cir.1982). The rule requiring application of existing law governs changes made by an administrative *765 agency acting in its rulemaking capacity as well as statutory and judicial changes. Thorpe v. Durham Housing Authority, 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969). Because the new FEMA regulation became effective while this case was pending before the Court, the Court concludes that the Bradley rule governs.
In determining whether manifest injustice would result from application of a new rule, the Court must consider: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." Bradley, 416 U.S. at 717, 94 S.Ct. at 2019. With respect to the first Bradley factor, the Court indicated that retroactivity was favored in cases involving a governmental entity and "great national concerns." Id. at 718-19, 94 S.Ct. at 2019-20; see also Seniors United for Action, 675 F.2d at 189. The first factor weighs in favor of applying the regulation to plaintiff's case because of FEMA's involvement and the strong statutory policy of providing comprehensive and reliable flood insurance.
The second Bradley factor concerns the injustice that may result by applying the new rule to a person who would be deprived of a matured or unconditional right. Id. at 720, 94 S.Ct. at 2020. FEMA has no matured or unconditional right to the funds allocated to the NFIP which are held for the benefit of victims of flood disasters, such as plaintiff.
Finally, the third Bradley factor militates in favor of application of the new FEMA regulation to this case. No "new and unanticipated obligations" have been imposed upon defendant "without notice or an opportunity to be heard." Id. Defendant carefully considered the equities and received public comment prior to promulgating the new rule. FEMA concluded that the change was necessary to remedy the unfairness of not providing coverage to elevated Pre-FIRM buildings. Therefore, the Court concludes that application of the new FEMA regulation to plaintiff's case would not result in manifest injustice.
The FEMA regulation does not expressly address the issue of whether the new rule should be applied prospectively only or retroactively as well. However, FEMA's statement that losses occurring prior to October 1, 1988, "would be adjusted on the basis of current policy provisions", 53 Fed. Reg. at 27990, and FEMA's incorporation of the new provisions into the SFIP, id. at 27991, suggests that FEMA intended retroactive application. Moreover, the language of the SFIP reflects FEMA's intention to provide insureds with the benefit of any favorable changes in policy coverage. The SFIP contains a liberalization clause which provides:
While this policy is in force, should we have adopted any rules or regulations by which this policy could be broadened or extended for your benefit ... such matters shall be considered to be incorporated in this policy without additional premium charge and shall inure to your benefit....
44 C.F.R. Ch. 1, Pt. 61, App. A(2), Art. IX-Liberalization Clause. Policy is broadly defined to encompass any endorsements or renewal certificates indicating that coverage has been instituted for a new policy term. Id. at Art. II. The changes created by the new FEMA regulation were incorporated into plaintiff's policy of insurance by virtue of the liberalization clause.
The Court concludes that the new FEMA regulation applies to the present case. Because the new regulation makes the elevated structure exclusion inapplicable to elevated Pre-FIRM buildings, plaintiff is entitled to recover damages for the October, 1986, flood loss. Defendant's counterclaim for the $3,344.46 paid to plaintiff for the February, 1985, flood loss, which is based upon the elevated structure exclusion, must be denied.
With respect to the amount of damages to which plaintiff is entitled for the October, 1986, flood loss, defendant contends that plaintiff is limited to $3,721.06 because plaintiff signed a claim form agreeing to that amount on November 2, 1986. See Government Exhibit C. In essence, defendant argues that plaintiff is *766 equitably estopped from asserting that his claim exceeds $3,721.06. To establish estoppel, defendant must demonstrate the following:
(1) The party to be estopped knew the facts;
(2) The party to be estopped intended that his conduct be relied upon, or acted in a manner to justify such reliance;
(3) The party asserting estoppel was ignorant of the facts; and
(4) The party asserting estoppel reasonably relied on the other's conduct and was substantially injured as a result.
Bell v. O'Leary, 577 F.Supp. 1361, 1365 (E.D.Mo.1983), aff'd, 744 F.2d 1370 (8th Cir.1984). The evidence fails to demonstrate that the government relied upon the claim form to its detriment. Defendant never paid plaintiff the $3,721.06, and thus, suffered no injury. Prejudice in some tangible form is an essential element of an equitable estoppel claim. Old Republic Insurance Co. v. United States, 645 F.Supp. 943, 947 (Ct.Int'l.Trade 1986). Because the government has failed to establish the fourth element of estoppel, plaintiff is not estopped from asserting damages in excess of $3,721.06.
The Court finds that the estimate of the structural and personal property damage to plaintiff's home calculated by Joseph P. Caulfield, Public Adjuster, represents a fair and accurate estimation of plaintiff's losses. After reducing that amount to account for depreciation and plaintiff's deductible, the Court enters judgment in favor of plaintiff in the amount of $11,436.60.
NOTES
[1] Article V  Property Not Covered, Item F, of the SFIP sets forth the elevated structure exclusion which states, in pertinent part, that coverage is not provided for:

F. Enclosures, contents, machinery, building components, equipment and fixtures located at an elevation lower than the lowest elevated floor of an elevated building (except for the required utility connections and the footing, foundation, posts, pilings, piers or other foundation walls and anchorage system as required for the support of the elevated building), including a manufactured (i.e., mobile) home; finished basement walls, floors, ceilings and other improvements to a basement having its floor subgrade on all sides, (except for drywalls and sheetrock walls and ceilings, whether finished or unfinished, all only to the extent of replacing them with unfinished (i.e., nailed to framing but not taped or otherwise finished with paint or other covering) drywall or sheetrock ceilings or walls, and except for fiberglass insulation) and contents, machinery, building equipment and fixtures in such basement areas....
The elevated structure exclusion retains coverage for essential foundation elements in the enclosed areas.
[2] Defendant admits that plaintiff will fall under the newly amended regulation for any future loss.