Forrest D. CRIGER, Appellee,

v.

General Julius W. BECTON, Director of Federal Emergency Management Agency, Appellant.

No. 89–1097.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1990.

Decided May 11, 1990.

Edward Himmelfarb, Washington, D.C., for appellant.

Allen H. Surinsky, St. Louis, Mo., for appellee.

Before ARNOLD, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

General Julius W. Becton, Jr., director of the Federal Emergency Management Agency (FEMA), appeals the District Court's ruling that a regulation promulgated by FEMA under the National Flood Insurance Act of 1968 (NFIA), as amended, 42 U.S.C. §§ 4001–4127, should have retrospective effect. We reverse.

NFIA authorizes a federally assisted flood insurance program to provide coverage for those in need of such protection. The director of FEMA promulgates the "terms and conditions of insurability," 42 U.S.C. § 4013(a) (1982), which appear in the Code of Federal Regulations as administrative regulations and are subject to procedural requirements such as notice and comment.

Forrest Criger was insured under the National Flood Insurance Program (NFIP)

and was issued a Standard Flood Insurance Policy (SFIP) on his St. Charles, Missouri, home, located on the Mississippi River. The policy term was from October 22, 1985, to October 22, 1986. His property was flooded on or about October 7, 1986, and he made a timely claim against his SFIP for the flood damage. An independent adjuster first inspected the property in late October 1986. In February 1987, a reinspection report concluded that the Criger home was an elevated structure. That designation excluded from coverage the property damage to the structure's lower level enclosure and its contents, as required by the regulations and the SFIP terms then in effect. 44 C.F.R. § 61.5(f)(10) (1985); 44 C.F.R. Pt. 61, App. A(1), Art. V(F) (1985).[1] A public adjuster reinspected the property, at Criger's request, and agreed with the earlier determination that the residence was an elevated structure. Recovery for the flood loss was denied. Criger then brought this action seeking judicial review of FEMA's denial of flood insurance coverage. FEMA counterclaimed for recovery of $3,344.46 it paid Criger in 1985 on a claim for flood damage to the lower level enclosure.

The case came before the District Court on three issues: (1) whether the exclusion in question was vague, discriminatory, and unenforceable; (2) whether FEMA was estopped from enforcing the exclusion as to Criger's 1986 loss because it had treated his residence as nonelevated when it paid a claim for flood damage sustained in February 1985; and (3) whether the exclusion was inapplicable because Criger's home is an initial construction under FEMA's interpretation No. 1–87. The District Court did not reach these issues because it determined, after both parties briefed the issue, that a new FEMA regulation, effective October 1, 1988, which would render the exclusion inapplicable to Criger's property, applied retroactively to allow Criger to recover for the 1986 flood loss. *Criger v.*

*Becton,* 702 F.Supp. 761 (E.D.Mo.1988). The District Court denied FEMA's counterclaim because it was "based upon the elevated structure exclusion." *Id.* at 765. Presumably the court believed the 1988 amendment applied to the 1985 loss as well as the 1986 loss.

Criger purchased the insured property in 1975. In the 1960's, the original structure had been moved closer to the river and the lower level had been enclosed. The exclusion in effect at the time of Criger's 1986 flood loss applied to such enclosures of all elevated buildings. The October 1, 1988, regulation narrowed the exclusion to include only enclosures of elevated buildings "for which the start of construction or substantial improvement occurred after December 31, 1974, or on or after the effective date of the initial Flood Insurance Rate Map (FIRM) for the community in which the building is located, whichever is later." 44 C.F.R. Pt. 61, App. A(1), Art. II (1989). The effective date of the FIRM for St. Charles county was September 15, 1978, making Criger's property a pre-FIRM building. Because it found that the 1988 regulation applied retroactively to Criger's 1986 flood loss, the District Court held that coverage for the 1986 flood damage was improperly denied and ordered FEMA to pay Criger $11,436.00. FEMA appeals.

The only issue before us is whether the 1988 regulation should be given retroactive effect to cover flood losses that occurred under a policy that terminated nearly two years before the effective date of the new regulation. We hold that it should not and reverse and remand the case for further proceedings with respect to the issues raised by Criger but not yet addressed by the District Court,[2] and with respect to FEMA's counterclaim.

■ FEMA, the agency charged with administering NFIA, insists on this appeal

---

1. Appendix A(1) of 44 C.F.R., Part 61, which sets out the actual language of the SFIP, provides in the relevant part of Article V(F): "We do not cover and will not pay for damage to or loss of any of the following: Enclosures, contents, machinery, building components, equipment and fixtures located at an elevation lower than the

lowest elevated floor of an elevated building. . . ."

2. We decline Criger's invitation to reach these issues before the District Court has taken the opportunity to do so.

that it did *not* intend for the regulation at issue to apply retroactively, despite the District Court's contrary conclusion. FEMA's interpretation of its own regulation is entitled to great deference by a reviewing court.

> [W]hen it is the Secretary's [of Health and Human Services] regulation that we are construing, and when there is no claim in this Court that the regulation violates any constitutional or statutory mandate, we are properly hesitant to substitute an alternative reading for the Secretary's unless that alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.

*Gardebring v. Jenkins,* 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988); *accord Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (great deference accorded managing agency's interpretation of statute, but "deference is even more clearly in order" when agency is construing administrative regulation); *Moore v. Custis,* 736 F.2d 1260, 1262 (8th Cir.1984) ("[I]t is equally well established that great deference should be accorded an administrative agency's interpretation of its own regulations."); *Dymond v. United States Postal Serv.,* 670 F.2d 93, 96 (8th Cir.1982) ("The prevailing standard is that an administrative interpretation is to be afforded controlling weight unless it is plainly erroneous or inconsistent with the regulations at issue.").

■ The regulation at issue says nothing to suggest it was intended to have retroactive effect, and the "other indications" of FEMA's intent either support FEMA's interpretation of the regulation or are so ambiguous that they do not compel an alternative reading of the regulation.

The new regulation was published in final form on July 26, 1988, with a declared effective date of October 1, 1988. 53 Fed. Reg. 27,989 (1988). Under the Administrative Procedure Act (APA), publication of a new regulation thirty days before the effective date normally is required. 5 U.S.C. § 553(d) (1988). The regulation may be made effective immediately, however, when it "grants or recognizes an exemption or relieves a restriction." *Id.* § 553(d)(1). Notwithstanding that permissive statute, which clearly would apply to this regulation, the revised SFIP exclusion had an effective date more than two months after its final publication. It is difficult to fathom why FEMA would delay the effective date if it intended retroactive coverage. While we do not hold that a delayed effective date on a regulation is conclusive of prospective intent, it certainly is evidence that cuts against retroactive application. And this is not the only evidence of FEMA's intent that the new regulation would have prospective effect only.

■ The record shows that FEMA intends to increase the premium rate for elevated, enclosed pre-FIRM buildings in an effort to cover at least a portion of the additional cost of the expanded coverage.[3]

> Since Pre–FIRM buildings with enclosures would no longer be subject to the limitation coverage under the SFIP, FEMA intends to increase the premium rates for such buildings as part of future premium rate changes after this rule becomes final. Thus, the existing premium rate differential between the rates for Pre–FIRM elevated buildings without enclosures and the higher rates for Pre–FIRM elevated buildings with enclosures would be increased.

53 Fed.Reg. 10,548 (1988) (proposed April 1, 1988). That NFIP is a federally subsidized program does not compel the conclusion that the premiums insureds pay are not expected to defray the cost of covering the risk. In fact, NFIA authorizes estimation of premium rates according to standard insurance risk and actuarial studies. 42 U.S.C. § 4014 (1982); *see Drewett v. Aetna Casualty & Sur. Co.,* 539 F.2d 496, 498 (5th Cir.1976) ("Because [NFIP's] exposure to claims and its premiums are re-

---

**3.** As of the oral argument of this appeal, FEMA had not yet put this premium increase into effect.

quired to be estimated in accordance with standard insurance practices, and because private insurers carry part of the risk, it is clear that Congress did not intend to abrogate standard insurance law principles which affect such estimates and risks."); *see also* 48 Fed.Reg. 39,066 (1983) (final rule publication of the exclusionary regulation in effect at time of Criger's loss) ("The purpose of the amendment is to revise the Program regulations to reflect changes in the Flood Insurance Manual used by private sector property insurance agents and brokers in producing flood insurance business and coverage changes in the contract of flood insurance....").

With a private insurer, one generally pays higher premiums to get increased coverage. We do not accept the proposition that, merely because NFIP is federally assisted, it is divorced from the actuarial principles that govern the actions of private insurers. FEMA's plan to charge higher premiums for the broader coverage afforded by the 1988 amendment is plainly inconsistent with an intent to allow recovery for a loss that occurred nearly two years before the 1988 amendment became effective.

 The District Court found that a standard "liberalization clause" in the SFIP provided evidence of FEMA's intent that the regulation apply retroactively. *Criger*, 702 F.Supp. at 765. That policy provision reads as follows:

> *While this policy is in force*, should we [FEMA] have adopted any forms, endorsements, rules or regulations by which this policy could be broadened or extended for your benefit by endorsement or substitution of policy form, then, such matters shall be considered to be incorporated *in this policy* without additional premium charge and shall inure to your benefit as though such endorsement of [sic] substitution of policy form had been made.

44 C.F.R. Pt. 61, App. A(1), Art. IX (1985) (emphasis added). The District Court reasoned that FEMA's definition of "policy," which "includes ... any renewal certificates indicating that coverage has been in-stituted for a new policy and policy term," *id.* Art. II, somehow makes the liberalization clause effective to pull the 1988 regulation into Criger's 1986 policy. That is not how we read the regulations. If that were the intent of the definition's language, the modifier in the phrase *"new* policy and policy term" would have been surplusage. As we see the matter, each policy, whether a renewal or new purchase, stands on its own for the period of time the policy designates, as the regulatory definition implies by stating that coverage is for a "policy term."

Criger argues that his 1985–86 SFIP remains "in force" until such time as his claim is finally adjudicated. The only authority he cites in support of this argument is a 1933 case from an intermediate New York state court, hardly controlling precedent in this Court. *Kocak v. Metropolitan Life Ins. Co.*, 237 A.D. 780, 263 N.Y.S. 283 (1933). We see no merit in Criger's argument. On the facts of this case, the policy that was "in force" at the time of Criger's October 7, 1986, flood loss expired October 22, 1986, and was no longer in force on October 1, 1988. His *claim* under the 1986 policy, however, remains alive until it is finally adjudicated, and he is entitled to FEMA's performance of its obligations under that policy and with respect to that claim. The question is simply whether the 1988 policy revision expanding FEMA's obligations is to be read retroactively into a policy that expired in 1986.

We are convinced the SFIP liberalization clause was intended merely to give insureds the benefit of favorable changes made by FEMA during the policy term. The clause fosters administrative efficiency by allowing FEMA to give an insured the benefit of an amendment without requiring each SFIP to be rewritten or endorsed every time FEMA makes a change. The liberalization provision does not give retroactive effect to new SFIP terms; rather, it serves as a device for automatically reading into existing policies beneficial changes as soon as FEMA makes them and declares them in force. Whether a particular policy change is to be given retrospective effect,

and the extent of its retrospectivity, if any, depends upon FEMA's intent, not upon the liberalization clause.

The District Court also found evidence of FEMA's intent for retroactive application in fragments from the rule-making record for the 1988 amendment. Criger vigorously argues that these fragments are conclusive of FEMA's retrospective intent as regards this regulation. We are not persuaded.

■ In explaining its reasons for the 1988 revision, FEMA stated that it was amending elevated building coverage to "correct an unintended disparity in flood insurance coverage between elevated" and nonelevated pre-FIRM buildings. 53 Fed. Reg. 27,989 (1988). Criger suggests that this goal will not be achieved unless the provision is given retroactive effect. He does not explain, however, how retroactivity would assist those who were denied recovery under the original regulation and whose claims already are closed. Surely he does not suggest that FEMA should reopen and pay all claims on elevated pre-FIRM buildings with enclosures for any loss occurring during the years the original regulation was in effect. Criger's argument that FEMA's articulated purpose for the revised regulation somehow mandates its retroactive application is specious and we reject it.

■ Criger also relies upon a statement by FEMA that is patently ambiguous. In response to a comment made during the notice and comment period for the proposed amendment, FEMA stated: "There was a comment inquiring about flood losses suffered before the change would become effective. The answer, of course, is that losses before the effective date of the change would be adjusted on the basis of current policy provisions." 53 Fed.Reg. 27,990 (1988). The District Court took the view that this language "suggests that FEMA intended retroactive application." *Criger,* 702 F.Supp. at 765. Criger argues that "current" means "current at the time of the District Court's decision." FEMA interprets the word to mean "current at the time of loss or adjustment." Since either

interpretation is plausible, the response tells us nothing. Were we to make a choice, however, we would be inclined to agree with FEMA, since it knows best what its own unintentionally ambiguous response was intended to mean. In any event, this ambiguous response cannot be taken as a manifestation of FEMA's intent sufficient to compel a judicial reading giving retroactive effect to the change wrought by the 1988 amendment.

We conclude that there is insufficient evidence from which to infer that FEMA intended the elevated pre-FIRM structure exclusion amendment to apply retroactively to policies with terms ending before the amended regulation's effective date of October 1, 1988.

■ The District Court ruled, however, and Criger argues, that, irrespective of FEMA's intent, *Bradley v. School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), controls here and mandates retroactive application. We do not agree.

In *Bradley,* the Court held that a statute allowing recovery of attorney fees applied retroactively to services rendered before the statute's effective date. The Court reiterated the long-standing rule upon which its holding was based: "[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. The Court noted that the principle applied equally to regulatory amendments made by administrative agencies. *Id.* at 715, 94 S.Ct. at 2018 (quoting *Thorpe v. Housing Auth.,* 393 U.S. 268, 282, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969)). Criger urges that this is the law applicable to this case. FEMA, on the other hand, directs our attention to a group of Supreme Court cases that emphasize the venerable principle that laws are to have prospective effect only, unless the law-making entity has indicated otherwise. FEMA believes that this is the controlling precedent here. This Court noted on a prior occasion the confusion created by these two apparently contradictory lines of

decision. *Iowa Power & Light Co. v. Burlington Northern, Inc.*, 647 F.2d 796, 805 n. 13 (8th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). On the facts of this case, however, we find the *Bradley* approach inappropriate.

In 1928, the Court said, "Statutes are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears." *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 162–63, 48 S.Ct. 236, 237, 72 L.Ed. 509 (1928).[4] Clearly the status of Criger's 1986 flood loss claim was "fixed" at the time of the loss by the regulations then in effect and, as we have shown, an intent for retroactive application of the 1988 amendment is not discernible from either the language of the amendment or from any other indications of FEMA's intent at the time of the regulation's promulgation.

In a recent post-*Bradley* decision, the Court made it crystal clear that administrative regulations ordinarily are not to be given retroactive effect:

Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. By the same principle, a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms. Even where some substantial justification for retroactive rulemaking is presented, courts should be reluctant to find such authority absent an express statutory grant.

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (citations omitted). *Bowen* thus takes Criger's case out of the *Bradley* analysis. And there is additional Supreme Court authority that, given the nature of the regulation at issue here, precludes the application of *Bradley* to this case.

In *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), the issue was retroactive application of an administrative regulation regarding substantive requirements for certain federal grants. The Court found that the *Bradley* presumption was inappropriate because "practical considerations related to the administration of federal grant programs imply that obligations generally should be determined by reference to the law in effect when the grants were made." *Bennett*, 470 U.S. at 638, 105 S.Ct. at 1559. Here, there are comparable "practical considerations" involved in the administration of an insurance program. The regulation at issue is, in effect, a term of an insurance policy. FEMA determines policy terms through ordinary administrative rulemaking simply because the flood insurance program is federally mandated and Congress has vested the agency with responsibility for promulgating policy terms. *See* 42 U.S.C. § 4013(a). The technical rulemaking requirements do not alter the nature of the regulation: it is, in fact, a term of an insurance policy. If each new regulation was potentially effective to amend every SFIP ever written, whether or not the policies had expired, the result would be an administrative nightmare.

In *Miller v. United States*, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977 (1935), a case with facts very similar to this one, the Supreme Court was asked to declare that retroactive effect be given to a federal war risk insurance policy regulation that broadened coverage but was adopted eleven years after the petitioner's policy had lapsed and nearly twelve years after his injury. The Court held that the regulation was inapplicable to the petitioner "because it contain[ed] nothing to suggest that it was to be given a retrospective effect so as to bring within its purview a policy which had long since lapsed and which had relation only to an alleged cause of action long since matured." *Miller*, 294 U.S. at 439, 55 S.Ct. at 441. We believe the reasoning of *Miller* is fully applicable to Criger's at-

---

**4.** The same rule applies to substantive administrative rules. *See Greene v. United States*, 376 U.S. 149, 160, 84 S.Ct. 615, 621, 11 L.Ed.2d 576 (1964).

tempt to give retrospective effect to the 1988 amendment so as to bring within its purview his long-expired 1986 flood insurance policy, the provisions of which govern a claim that matured in October 1986, almost two full years before the 1988 amendment was promulgated.

The District Court's decision, including its denial of FEMA's counterclaim, is reversed and the case is remanded for further proceedings consistent with this opinion. We express no view of the merits of any of the issues that remain open on remand concerning either Criger's claim or FEMA's counterclaim. We hold only that the October 1, 1988, amendment of the elevated structure exclusion does not have retrospective effect.