**SECURITY SERVICES, INC. f/k/a Riss International Corporation, Plaintiff,**

v.

**CRAMER PRODUCTS, INC., Defendant.**

No. 91–0966–CV–W–2.

United States District Court, W.D. Missouri, W.D.

July 14, 1992.

## ORDER

GAITAN, District Judge.

Plaintiff (or carrier)[1] in the above titled action is seeking to recover "undercharges" from the defendant (or shipper) for shipments made between January 9, 1987 and August 17, 1989. Essentially, the carrier alleges that it charged the shipper less than the rate stated in the controlling tariff on file with the Interstate Commerce Commission (hereafter ICC) and is therefore required by 49 U.S.C. § 10761(a) to seek the difference between the charged and filed rates. Defendant contests the validity of the tariff filed with the ICC and moves for summary judgment.

**1.** Plaintiff's complaint states that Riss International Corporation provided the actual transportation services and that Security Services, Inc. is debtor in possession in bankruptcy proceedings. However, for the sake of simplicity the court shall refer to plaintiff as carrier.

## I. FACTUAL SUMMARY

During the period of January 9, 1987, to August 17, 1989, carrier provided transportation services to the shipper pursuant to bills of lading. The plaintiff alleges in its complaint that the freight charges for four of these shipments "were in amounts less than the published rates contained in the tariffs of Riss on file with the Interstate Commerce Commission and in effect at the time of transportation." Complaint, ¶ 7.

In an effort to recover these alleged "undercharges," the carrier sent the shipper four balance due invoices reflecting the difference between the actual freight charges already paid by the shipper and the freight charges that allegedly should have been paid pursuant to a tariff filed by Riss International with the ICC. Complaint, Exhibit A. The alleged "undercharges" total $3,966.99. Complaint, ¶ 8.

The four invoices indicated that the controlling tariff was ICC Riss 501–B. *Id.* ICC Riss 501–B set forth mileage rates (i.e. cost-per-mile) to be charged by the carrier. Plaintiff agrees, however, that ICC Riss 501–B incorporated as an integral component ICC Household Goods Bureau (HGB) 100 series which is a mileage guide outlining distances between various points of origin and destinations. Plaintiff's Suggestions in Opposition, p. 2. By affidavit, the shipper has alleged that the carrier was not a "participant" in the HGB mileage guide.[2] Affidavit of Ann M. Cleland, p. 1. Carrier does not dispute that it did not "participate" in the HGB mileage guide.

The shipper refused to pay the carrier the balance allegedly due under the invoices and the carrier subsequently filed this action. The shipper argues that summary judgment is warranted because the carrier's failure to participate in the HGB mileage guide invalidates ICC Riss 501–B and that any recovery based on the Riss tariff is precluded as a matter of law.

**2.** "Participation" entails certain formalities such as executing a power of attorney or concurrence with an agent such as the Household Goods Carriers Bureau. *See* 49 C.F.R. § 1312.4(d) (1991).

## II. STANDARDS FOR SUMMARY JUDGMENT

A movant is entitled to summary judgment pursuant to Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

■ The moving party bears the burden of proof. *Aetna Life Ins. Co. v. Great National Corp.*, 818 F.2d 19, 20 (8th Cir. 1987). When considering a motion for summary judgment, the court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving all doubts as to the facts or existence of any material fact against the moving party. *United States v. Conservation Chem. Co.*, 619 F.Supp. 162, 179–80 (W.D.Mo.1985).

Recently, the Supreme Court has redefined the standards to be considered in ruling on summary judgment motions. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court discussed the two requirements of Rule 56(c), that there be (1) no genuine issue of (2) material fact:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of this suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 248, 106 S.Ct. at 2510.

Further, "[i]n assessing whether a material fact is subject to a genuine dispute, a court should employ a standard essentially identical to that governing a motion for directed verdict under Rule 50(a)." *Id.* at 250, 106 S.Ct. at 2511. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Id.* at 586, 106 S.Ct. at 1356. If a rational trier-of-fact, considering the record as a whole, could not find in favor of the non-moving party, then a trial is unnecessary. *Id.*

■ Where, as in this case, the party moving for summary judgment does not bear the burden of proof at trial, that party must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). This burden is met when the moving party identifies those portions of the record demonstrating an absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

If the moving party meets the requirement, the burden shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. The trial judge then determines whether a trial is needed. "[W]hether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 615.

## III. ANALYSIS

### A. Controlling Law

■ The starting point for an analysis of defendant's motion is 49 U.S.C. § 10761(a), which states in relevant part:

> Except as provided in this subtitle, a carrier providing transportation or service ... shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility

that affects the value of that transportation or service, or another device. 49 U.S.C. § 10761(a) (1988). Section 10761(a) has been interpreted by courts and the ICC as locking parties into the filed rate regardless of ignorance or misquotation. "This practice has become commonly known as the 'filed rate doctrine.'" *Atlantis Express, Inc. v. Standard Transportation Services, Inc.*, 955 F.2d 529, 531 (8th Cir.1992). The United States Supreme Court recently reaffirmed that the filed rate doctrine, as embodied by § 10761(a), is an effort to effectuate one of the primary purposes underlying the Interstate Commerce Act, the elimination of discriminatory pricing schemes. *Maislin Indus., U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 130–31, 110 S.Ct. 2759, 2768, 111 L.Ed.2d 94 (1990). In *Maislin*, the Court revitalized the stringent application of the filed rate doctrine and held that the filed rate, as stated in a tariff properly filed with the ICC, was absolutely controlling unless unreasonable. *Id.* 497 U.S. at 126–29, at 2766–67.

Plaintiff seeks to enforce the filed rate doctrine against defendant as the basis for recovery. However, before the doctrine is activated via § 10761(a), the existence of an effective tariff must be established. To successfully state a prima facie case under § 10761(a), the plaintiff has the burden of proving that the tariff to be enforced is valid. *See Carriers Traffic Serv., Inc. v. Toastmaster, Inc.*, 707 F.Supp. 1498, 1505–06 (N.D.Ill.1988). Indeed, § 10761(a) states that the filed rate doctrine is only applicable to "a tariff that is in effect under this subchapter." 49 U.S.C. § 10761(a) (1988). If plaintiff is unable to ultimately prove that ICC Riss 501–B is an "effective" tariff, summary judgment should be granted against plaintiff.

Defendant's motion for summary judgment is premised on the argument that ICC Riss 501–B is invalid or ineffective because it erroneously incorporated a tariff (the HGB distance guide) in which plaintiff did not "participate." ICC regulations support this argument. 49 C.F.R. § 1312.4(d) states that "a carrier may not participate in a tariff issued in the name of another carrier or an agent unless a power of attorney or concurrence has been executed. Absent effective concurrences or powers of attorney, tariffs are void as a matter of law." 49 C.F.R. § 1312.4(d) (1991). There is no dispute that carrier did not execute a power of attorney or a concurrence in favor of the Household Goods Carriers Bureau as required by § 1312.4(d). Therefore, the primary issue to be resolved is whether § 1312.4(d) renders ICC Riss 501–B ineffective thus precluding application of the filed rate doctrine.

### B. The *Freightcor* Decision

For § 1312.4(d) to serve as a basis for granting summary judgment in favor of the shipper, three assumptions must be validated: (1) That the ICC Household Goods Bureau 100 series mileage guide is a "tariff" as that term is used in the controlling statutes and ICC regulations; (2) That the carrier was required to "participate" (by executing a concurrence or power of attorney) in the ICC Household Goods Bureau 100 series mileage guide as a tariff; and (3) That the carrier's mere reference to ICC Household Goods Bureau 100 series mileage guide in ICC Riss 501–B did not satisfy the participation requirement. *See Freightcor Services, Inc. v. Vitro Packaging, Inc.*, 969 F.2d 1563, 1565–66 (5th Cir. 1992).

The factual and legal parallels between the current action and *Freightcor* are so close as to be worthy of comment. In *Freightcor*, the plaintiff was a bankrupt carrier who, as debtor-in-possession, sought "undercharges" from a shipper in federal district court. *Id.* at 1564. Plaintiff's claim for "undercharges" was based upon two filed ICC tariffs that incorporated an ICC Household Goods Bureau 100 series mileage guide. *Id.* There was no dispute that the plaintiff failed to "participate" in the HGB mileage guide by filing a power of attorney or concurrence with the Household Goods Carriage Bureau. *Id.* In defense, the shipper moved for summary judgment arguing that the tariffs the carrier sought to enforce were void due to the carrier's lack of participation in the HGB mileage guide. *Id.* The district court denied the shipper's motion for summary

judgment and granted summary judgment for the carrier, presumably pursuant to the filed rate doctrine. *Id.*

On appeal, the Fifth Circuit reviewed the district court's implicit finding "either (1) that the mileage guide is not a tariff, or (2) that Freightcor was not required to participate in the mileage guide, or (3) that Freightcor's mere reference to the mileage guide amounted to participation." *Id.* at 1565. The Court of Appeals held that the tariffs plaintiff sought to enforce were void, as a matter of law, because of plaintiff's lack of participation in the HGB tariff. Accordingly, the district court's decision was reversed and the action remanded with instructions that judgment be entered in favor of the shipper. *Id.* at 1572.

The Fifth Circuit in *Freightcor* was faced with facts and a legal issue identical to those currently before this court: Whether a carrier can recover "undercharges" pursuant to a filed tariff that incorporates, without carrier participation, an ICC Household Goods Bureau 100 series mileage guide. Although *Freightcor* is not directly controlling in this jurisdiction, this court finds the reasoning and analysis of the Fifth Circuit highly persuasive and will adopt the *Freightcor* decision in ruling on defendant's motion for summary judgment.

C. Is the HGB Mileage Guide a Tariff?

In *Freightcor*, the court concluded that the HGB mileage guide "was clearly a tariff as the word is used in section 1312.4(d)." 969 F.2d at 1566. In arriving at this conclusion the court independently reviewed the ICC regulations defining both "agent" and "tariff." [3] *See* 49 C.F.R. § 1312.1(b)(2) & § 1312.1(b)(35). The court found that the Household Goods Carriers Bureau was "indisputably" an agent "authorized to publish and file rates." *Freightcor*, 969 F.2d at 1566; *see also* 49 C.F.R. § 1312.-1(b)(2). Further, the mileage guide is a publication "meant to be the basis for shipping bills, filed in an agent's name" and was filed with, and designated by, the ICC as a tariff. *Freightcor*, 969 F.2d at 1566;

*see also* 49 C.F.R. § 1312.1(b)(35). Accordingly, the court concluded that the mileage guide was a tariff.

■ This court finds the Fifth Circuit's reasoning in *Freightcor* convincing and will apply it to this action. Accordingly, this court finds that the HGB mileage guide incorporated into ICC Riss 501–B was a "tariff" as defined and applied by the relevant ICC regulations, including 49 C.F.R. § 1312.4(d). Having so decided, the court turns to the second and third *Freightcor* inquiries. For the sake of simplicity, these inquiries will be dealt with concurrently.

D. If the Carrier was required to "participate" in the HGB Mileage Guide as a tariff, was merely referencing the mileage guide sufficient participation?

■ In addressing the second and third queries, the Fifth Circuit in *Freightcor* deferred to the ICC's interpretation and application of its own regulations. Although no regulation expressly determines whether a carrier must "participate" in a mileage guide/tariff, the ICC has recently held that mileage guides are tariffs that require formal participation as defined by § 1312.4(d) (i.e. the execution of powers of attorney or concurrences). *Freightcor*, 969 F.2d at 1567 (citing *Jasper Wyman & Son, et al. re: Overland Express, Inc.*, ICC Case No. 40150, 8 I.C.C.2d 246, 252 (1992)). The Fifth Circuit accepted the ICC's ruling by finding that the decision had a reasonable basis in law. Specifically, the court found that neither the organic statute, primarily 49 U.S.C. § 10762(b)(2), or ICC regulations, primarily 49 C.F.R. § 1312.30(c)(4), make a distinction between types of tariffs in which carriers must participate. *Freightcor*, 969 F.2d at 1567. Therefore, the court concluded that requiring a carrier to formally participate in a mileage guide or face the consequences of § 1312.4(d) had a reasonable basis in law.

Similarly, the Fifth Circuit adopted the ICC's position that merely referring to a mileage guide in another tariff is insuffi-

---

**3.** While the Fifth Circuit gave deference to the ICC's interpretation and application of the controlling statutes and regulation as to the second and third prong of the analysis, the court independently arrived at the conclusion that the HGB mileage guide was a tariff.

cient participation to meet the formal requirements of § 1312.4(d). *Id.* As before, the court found that the ICC's conclusion had a reasonable basis in law. Specifically, in *Jasper Wyman* the ICC found that 49 C.F.R. § 1312.30(c)(4), despite amendments in 1984, requires a carrier to do more than simply refer to a mileage guide in another tariff; the carrier must formally "participate" in the mileage guide.[4] This requirement of participation is also clearly stated in 49 C.F.R. § 1312.27(e) (1991).

■ This court finds the reasoning of the Fifth Circuit in *Freightcor* persuasive. Further, this court is bound to give strong deference to the ICC's interpretation and application of the governing statute and regulations in *Jasper Wyman. See City of St. Louis v. Department of Transp.*, 936 F.2d 1528, 1534 n. 1 (8th Cir.1991) (stating that great deference should be given to an agency's interpretation of its regulations and controlling statute); *see also Criger v. Becton*, 902 F.2d 1348, 1351 (8th Cir.1990). The ICC's interpretation and application of 49 C.F.R. § 1312.4(d) is reasonable and supported by the organic statute and other ICC regulations. Therefore, this court concludes that the carrier was required to formally "participate" in the HGB mileage guide and that merely referring to the HGB mileage guide in ICC Riss 501–B was inadequate to "participate" in the HGB tariff.

## IV. CONCLUSION

49 C.F.R. § 1312.4(d) is clear: A carrier's tariff that refers to a second tariff in which the carrier has not "participated" is void *ab initio* as a matter of law. *Jasper Wyman & Son, et al. re: Overland Express, Inc.*, ICC Case No. 40150, 8 I.C.C.2d 246, 258 (1992). Plaintiff has offered no evidence creating a genuine issue concerning its lack of formal participation in the HGB mileage guide that was incorporated into ICC Riss 501–B. In fact, plaintiff does not dispute that, as to the HGB mileage guide, it failed to execute a power of attorney or concurrence in favor of the Household Goods Carriers Bureau, the formal "participation" mandated by § 1312.4(d). The court must conclude, therefore, that ICC Riss 501–B was void *ab initio* as a matter of law. Accordingly, defendant's motion for summary judgment will be granted.

Plaintiff has advanced other arguments as to why summary judgment should not be granted pursuant to § 1312.4(d).[5] How-

---

**4.** Section 1312.30(c)(4) states "[e]xcept as provided in § 1312.13(e)(2), only distance guides officially on file with the Commission may be referred to." Prior to the amendments of 1984, § 1310.16 expressly required carriers using distance rates to be parties to any distance guides referred to in tariffs. In *Jasper Wyman,* the ICC explained that the 1984 amendment omitting the express "participation" requirement in § 1312.30(c)(4) was not intended to do away with that requirement. Rather, the omission simply eliminated "a redundant requirement to participate in the tariffs of other carriers...." *Freightcor,* 969 F.2d at 1567 (citing *Jasper Wyman & Son, et al. re: Overland Express, Inc.,* ICC Case No. 40150, 8 I.C.C.2d 246, 252 (1992)). This requirement to participate in other tariffs is set out in 49 C.F.R. § 1312.27(e) (1991).

**5.** Plaintiff has advanced numerous arguments that have been previously raised and rejected in *Freightcor* and *Jasper Wyman.*

For example, plaintiff argues that the decisions of the United States Supreme Court in *Interstate Commerce Commission v. American Trucking Ass'n,* 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), *Davis v. Portland Seed Co.,* 264 U.S. 403, 44 S.Ct. 380, 68 L.Ed. 762 (1924),

and *Berwind–White Coal Mining Co. v. Chicago & E.R.,* 235 U.S. 371, 35 S.Ct. 131, 59 L.Ed. 275 (1914), necessitate that defendant's motion for summary judgment be denied. However, these decisions resolve an issue essentially unrelated to the issue currently before the court. All three decisions dealt with the ICC's power to reject *effective* tariffs that did not technically conform to ICC regulations. *See Freightcor Services, Inc. v. Vitro Packaging, Inc.,* 969 F.2d at 1568 n. 6 & 1569 (5th Cir.1992); *Jasper Wyman & Son, et al. re: Overland Express, Inc.,* ICC Case No. 40150, 8 I.C.C.2d 246, 260 (1992). The issue presented by this action is more fundamental than the core issue of *American, Davis* and *Berwind–White;* this court must resolve what *constitutes* an effective tariff. Further, none of these cases involved a regulation that declared a tariff "void as a matter of law." *Freightcor,* 969 F.2d at 1568 n. 6. Therefore, *American, Davis* and *Berwind–White* do not cut against defendant's motion for summary judgment.

Similarly, plaintiff argues that 49 C.F.R. § 1312.4(d) as interpreted and applied by the ICC in *Jasper Wyman* is contrary to the Supreme Court's rulings in *Interstate Commerce Commission v. American Trucking Ass'n,* 467

ever, the court has determined after review of these arguments that they are without merit and do not warrant further discussion.

Accordingly, it is ORDERED that defendant's motion for summary judgment is GRANTED.

U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), and *Aberdeen & Rockfish R. Co. v. U.S.*, 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 814 (1984). Plaintiff argues that both *American* and *Aberdeen* prohibit the ICC from retroactively invalidating effective tariffs. While this is true, *American* and *Aberdeen* merely beg the question currently before this court; is ICC Riss 501–B an effective tariff? Further, even if *American* were relevant, the Fifth Circuit has held that the ICC's interpretation and application of § 1312.-4(d) fully conforms with the standards stated in *American*. *Freightcor*, 969 F.2d at 1569–72. Specifically, the Fifth Circuit determined that declaring non-conforming tariffs invalid *ab initio* "furthers a specific statutory mandate of the Commission … and … the exercise of power (to invalidate non-conforming tariffs) is directly and closely tied to that mandate." *Id.* at 1569 (citing *American*, 467 U.S. at 367, 104 S.Ct. at 2465). This court agrees with the Fifth Circuit's holding and finds plaintiff's argument without merit.

Finally, citing *Interstate Commerce Commission v. American Trucking Ass'n*, 467 U.S. 354, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984), and *Jasper Wyman & Son, et al. re: Overland Express, Inc.*, ICC Case No. 40150, 8 I.C.C.2d 246 (1992), plaintiff argues that ICC Riss 501–B is "effective" in that it was filed with the ICC and not rejected. The ICC rejects this argument in *Jasper Wyman* by pointing out that while technically deficient tariffs filed and not rejected can be deemed "effective," a deficiency under § 1312.-4(d) is more than technical. *Id.* at 257–58. Indeed, by the explicit mandate of ICC regulation the deficiency renders the tariff void as a matter of law. *Id.* This court finds the ICC's decision in *Jasper Wyman* well reasoned and dispositive of plaintiff's argument.