**ATLAS PALLET, INC., Plaintiff, Appellant,**

v.

**Bernard GALLAGHER, etc., et al., Defendants, Appellees.**

**No. 83–1002.**

United States Court of Appeals, First Circuit.

Argued Aug. 1, 1983.

Decided Jan. 16, 1984.

---

John A. MacFadyen, III, Providence, R.I., with whom George M. Vetter, Jr., Providence, R.I., was on brief, for plaintiff, appellant.

Brian P. Cassidy, Regional Counsel, Federal Emergency Management Agency, Bos-

ton, Mass., with whom Lincoln C. Almond, U.S. Atty., and Robert L. Gammell, Asst. U.S. Atty., Providence, R.I., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

PEREZ–GIMENEZ, District Judge.

We review here a decision of the United States District Court for the District of Rhode Island denying recovery for damages sustained by appellant, Atlas Barrel and Pallet, Inc. (hereinafter Atlas Pallet or appellant), as the result of a flood. Appellant bases its claims for recovery on a Standard Flood Insurance Policy (SFIP) issued pursuant to the National Flood Insurance Program (NFIP),[1] which is currently administered by the Federal Emergency Management Agency (FEMA).[2] The question on appeal is whether the district court was correct in denying Atlas Pallet's claims (1) for damage to its milldam, (2) for the cost of installing a new fire protection sprinkler system, and (3) for the increased fire insurance costs during the time when the sprinkler system was inoperative. For the reasons stated herein, we affirm the decision of the district court.

## I.

The material facts relative to this case are undisputed and were the subject of a stipulation by the parties. Appellant, Atlas Pallet, is engaged in the manufacturing, reconditioning and storing of wooden pallets used in the transportation and storage of goods. Atlas Pallet is housed in a large frame building complex located on the west bank of the Clear River, in Mohegan, Rhode Island.

At all times relevant to the case at bar, Atlas Pallet maintained in full force and effect a Standard Flood Insurance Policy which provided up to $100,000 of flood insurance for its building on the west bank of the Clear River. The foundation wall on the southwest side of said building is built approximately thirty feet into the river. Prior to March 22, 1980, a milldam extended from the foundation of the building across to the opposite bank of the Clear River, a distance of approximately eighty feet. The milldam and the foundation together impounded water flowing in the Clear River. The impounded water entered the building through an opening in the foundation and flowed into a watercrib, where it provided a positive head of water for appellant's fire protection sprinkler system.

On or about March 22, 1980, the Clear River flooded causing the milldam to collapse and some structural damage to the insured building, i.e., to the foundation and watercrib. As a result of the flood, the ensuing collapse of the dam, and the damage to the watercrib, Atlas Pallet's gravity-fed sprinkler system was rendered inoperative. Thus, appellant had to install a new pump-fed sprinkler system and was faced with an increase in the cost of fire insurance during the time the premises were without a sprinkler system.

Atlas Pallet promptly filed a notice of loss with appellees in accordance with the terms and conditions of the SFIP. Appellant's claim was investigated and denied.

---

* Of the District of Puerto Rico, sitting by designation.

1. The National Flood Insurance Program was created to provide flood insurance to individuals and businesses with property located in flood-prone areas. 42 U.S.C. § 4001. The NFIP is codified at 42 U.S.C. §§ 4001–4128.

2. All functions originally vested in the Secretary of Housing and Urban Development pursuant to 42 U.S.C. § 4011 were transferred to the Director of the Federal Emergency Management Agency under Section 202 of Reorganization Plan No. 3 of 1978, 43 Fed.Reg. 41,943, 92 Stat. 3788, set out in the Appendix to Title 5, Government Organization and Employees.

Defendants Bernard T. Gallagher and Richard W. Krim were sued in their capacity as Acting Director of FEMA and Acting Administrator of the Federal Insurance Administration (FIA), respectively. Louis O. Giuffrida is now the Director of FEMA and Jeffrey S. Bragg is now the Administrator of FIA. They should be substituted for the named defendants.

Appellant then filed this lawsuit in the United States District Court for the District of Rhode Island. Atlas Pallet sought to recover for damage to the milldam (over $100,000), for damage to the watercrib and foundation ($23,705), for the cost of installing a new sprinkler system ($14,755.92), and for the increased cost of fire insurance during the time it was without a fire protection system ($5,456).[3] Thus, appellant sought to recover the full amount recoverable under the SFIP, *i.e.,* $100,000 minus a $200 policy deductible.

After a bench trial on the merits, the district court held that FEMA was liable for the damages to the watercrib and entered a judgment for Atlas Pallet in the amount of $23,705, plus interest and costs. However, the district court denied Atlas Pallet's claims for damage to the milldam and for the increased cost of fire insurance since those items were found not to be recoverable under the SFIP. The district court also denied recovery for the cost of installing a new sprinkler system on the ground that to permit Atlas Pallet to recover the cost of the new system, as well as the damages to the watercrib, would amount to a double recovery. It is from the denial of these three claims that Atlas Pallet brought this appeal.

## II.

◼ The issue before us is whether the district court was correct in denying Atlas Pallet's claims. Resolution of this issue requires interpretation of the Standard Flood Insurance Policy issued to the appellant. However, before we address the denial of appellant's claims, we must address the question of the applicable standard of review.

Appellees contend, quoting from our opinion in *Fortin v. Commissioner of Massachusetts Department of Public Welfare,* 692 F.2d 790 (1st Cir.1982), that we should affirm the decision of the district court unless we find that its findings are clearly errone-

ous. We disagree. Generally, where the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability depends solely upon a construction of the policy, the question presented is one of law for the court to decide. *Edmonds v. United States,* 642 F.2d 877, 881 (1st Cir. 1981); *American Credit-Indemnity Co. v. E.R. Apt Shoe Co.,* 74 F.2d 345, 348 (1st Cir.1934). *See also Auto-Owners Insurance Co. v. Jensen,* 667 F.2d 714 (8th Cir.1981); *First National Bank of Clinton v. Insurance Company of North America,* 606 F.2d 760 (7th Cir.1979); *Wiesmueller v. Interstate Fire & Casualty Co.,* 568 F.2d 40 (7th Cir. 1978); 1 Anderson, *Couch on Insurance 2d* § 15:3 (1959); 22 J. Appleman, *Insurance Law & Practice* § 12,853 (1979). Thus, because construction of an insurance policy is a question of law, a reviewing court is not bound by the interpretation given to the policy by the trial court. Instead, the reviewing court may make an independent examination of the policy. *AMF, Inc. v. Jewett,* 711 F.2d 1096, 1100 (1st Cir.1983) (appeals court has "considerable freedom" to review contract construction); *United Truck & Bus Service v. Piggot,* 543 F.2d 949, 950 (1st Cir.1976) (where district court has "only construed the written contract itself, its conclusions [are] freely reviewable"). *See also Wiesmueller v. Interstate Fire & Casualty Co., supra; Healy Tibbitts Construction Co. v. Insurance Company of North America,* 679 F.2d 803 (9th Cir.1982) (court of appeals reviews construction of insurance policy exclusionary clause de novo); *In re Beverly Hills Bancorp,* 649 F.2d 1329 (9th Cir.1981) ("interpretation of a contract presents a question of law, and [Court of Appeals] 'is not bound by the findings of the trial court'"); *First National Bank of Miami v. Insurance Company of North America,* 495 F.2d 519, 522 (5th Cir. 1974) ("[t]here is virtually unanimous acceptance of the proposition that the interpretation of a contract is a question of law,

---

**3.** Prior to trial, the parties entered into a "Stipulation as to Damages" as to each item for which Atlas Pallet sought to recover. The numbers enclosed in parentheses represent the stipulated damages.

not fact, and, therefore, not restricted to review under the 'clearly erroneous' rule"). Hence, we can, and will, make our own examination of the policy of insurance issued to Atlas Pallet to determine whether the district court was correct in denying the insured's claims.

■ Another preliminary matter which must be dealt with before we get into the merits of this case is the question of which law we are to apply. It is settled that federal law controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Program. *West v. Harris*, 573 F.2d 873 (5th Cir.1978), *cert. denied*, 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979). However, in enacting the NFIP, Congress did not intend to abrogate standard insurance law principles. *Drewett v. Aetna Casualty & Surety Co.*, 539 F.2d 496 (5th Cir.1976). In *Drewett*, "the Court did not hold the statutory or decisional law of any particular state to be applicable. Rather, it applied the 'traditional common-law technique of decision' by drawing upon standard insurance law principles." *West v. Harris*, 573 F.2d at 881 (citation omitted). Thus, although neither the statutory nor decisional law of any particular state is applicable to the case at bar, we are free to apply the "traditional common law technique of decision by drawing upon standard insurance principles." *Id.* In addition, because insurance policies are contracts, basic contract rules govern the interpretation of a policy's terms. *Eagle-Picher Industries v. Liberty Mutual Insurance Co.*, 682 F.2d 12 (1st Cir.1982) ("[i]nsurance policies are generally interpreted in the same way as other contracts"), *cert. denied*, —— U.S. ——, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). We will now proceed to

address the district court's denial of Atlas Pallet's claims.

*A. Damage to the Milldam*

■ A decision in this case turns on the terms of the policy of insurance issued to Atlas Pallet. Thus, we will set forth those terms with some particularity. Upon the payment of a premium by Atlas Pallet, the predecessor to FEMA agreed to insure appellant's property located on the west bank of the Clear River "against all direct loss by flood." "Flood" is defined in the policy as "a general and temporary condition of partial or complete inundation of normally dry land areas from (1) the overflow of inland or tidal waters." The SFIP further provides that when insurance covers a building, "such insurance shall include additions and extensions attached thereto; permanent fixtures, machinery and equipment forming a part of and pertaining to the service of the building." [4]

The district court denied recovery for the damage to the milldam because it was not covered under the policy. The court found that the dam was not an "addition or extension" of appellant's building because there was "no necessary and vital connection between the two." The district court further found that the milldam was not covered under the SFIP because the parties, particularly the government, did not intend that it be covered. The court thus stated that "if the government were in the business of insuring the integrity of a dam, that it would undertake that responsibility only very specifically and not in a general sense as argued here simply because of the fact that the dam is connected to the building."

For the milldam to be covered under the SFIP we would have to find that it consti-

---

**4.** The full text of this section of the SFIP reads as follows:

> A. *Building: When the insurance under this policy covers a building, such insurance shall include additions and extensions attached thereto, permanent fixtures, machinery and equipment forming a part of and pertaining to the service of the building;* personal property of the insured as landlord used for the maintenance or service of the building includ-

ing fire extinguishing apparatus, floor coverings, refrigerating and ventilating equipment, all while within the described building; also materials and supplies while within an enclosed structure located on the described premises or adjacent thereto, intended for use in construction, alteration or repair of such building, or appurtenant private structures on the described premises.
(Emphasis added.)

tutes an "addition or extension" attached to appellant's building. Although we recognize the well-settled principle of construction that insurance contracts are construed liberally in the insured's interest and strictly against the insurer, *Aschenbrenner v. U.S. Fidelity & Guaranty Co.,* 292 U.S. 80, 84–85, 54 S.Ct. 590, 592–593, 78 L.Ed. 1137 *reh'g denied,* 292 U.S. 615, 54 S.Ct. 861, 78 L.Ed. 1474 (1934); *Eagle-Picher Industries v. Liberty Mutual Insurance Co.,* 682 F.2d at 17, we cannot but conclude that Atlas Pallet's SFIP does not cover the damage to the milldam. In this respect, we agree with the district court that the milldam in question was not an "addition or extension" attached to appellant's building.

Whether a particular structure is covered under the "additions and extensions" clause of a policy of insurance "depends upon the language of the policy as applied to the actual situation and *use* of the property." 1 Anderson, *Couch on Insurance 2d* § 6:17, at 251 (1959) (emphasis added). It is necessary, in construing the terms "additions" and "extensions," to consider the connection of the alleged addition or extension with the use and purposes of the insured building contemplated by the parties to the contract. *See* 4 J. Appleman, *Insurance Law & Practice* § 2324, at 303; § 2353, at 378 (1969). *See also* 1 Anderson, *Couch on Insurance 2d, supra,* at 250. In fact, one commentator has gone as far as to state that "[w]hether or not a [structure] is an 'addition' may depend more upon its *use* than on its proximity." 1 J. Appleman, *Insurance Law & Practice* § 2326, at 307 (1969). In effect, it has been held that for a given structure to be covered as an addition to an insured building a court must find a "definite connection and community of use" between the structure and the main building. *Joseph E. Bennett Co. v. Fireman's Fund Insurance Co.,* 344 Mass. 99, 104–05, 181 N.E.2d 557 (1962). The question thus turns on the relative location of the structures, their accessibility, and adaptability to some common end, so that each case must be determined from its own peculiar facts.

Turning to the case at bar, appellant argues that there was in fact a "necessary and fundamental connection" between its building and the milldam. In essence, appellant argues that the insured building and the milldam had a "community of use." The milldam and the building's foundation together impounded water flowing in the Clear River. The impounded water entered the building through an opening in the foundation and flowed into a watercrib, thus providing a positive head of water for appellant's fire protection sprinkler system. Atlas Pallet contends that if the milldam and building were separated, it would have been almost impossible to use the same type of sprinkler system. This being the case, appellant argues that the milldam was covered under the SFIP as an "addition or extension" of the insured building.

We find that the fact that the milldam served to impound water for the appellant's fire protection sprinkler system is not sufficient to bring it within the "additions or extensions" clause of the SFIP. For there to be a "community of use" between the building and the milldam the latter would have to be more indispensably connected or related to the purpose or use of the former. The district judge found that the dam was originally constructed to provide a source of power for the building; only later was it used to impound water for the appellant's sprinkler system. At the time of the collapse of the milldam it was no longer being used to provide a source of power for Atlas Pallet's building. Important though the function of the dam was—in providing a positive head of water for the sprinkler system—that function was *not* indispensably related to the use of appellant's building for manufacturing and storing purposes. That is, the milldam was not involved in any way in the manufacturing, reconditioning or storing of wooden pallets, which were, and presumably still are, the uses to which appellant's building was put. It was only coincidental that Atlas Pallet could use the water impounded by the milldam and the foundation of its building as a source of supply for its sprinkler system. As things stood before the Clear River flooded on March 22, 1980, the milldam

adjoining appellant's building served no purpose whatsoever other than that of impounding water for appellant's sprinkler system. Thus, we hold that there was not a community of use between the milldam and Atlas Pallet's building. Consequently, the milldam was not an "addition or extension" of appellant's building—as we interpret that term—and so it was not included under the coverage of the SFIP. Hence, Atlas Pallet is not entitled to recover for the damage to the milldam.[5]

B. *Cost of Installing a New Sprinkler System*

■ Atlas Pallet argues that the court below erred in not allowing it to recover the cost of installing a new pump-fed fire protection sprinkler system. The district court found

> nothing in the policy which permits an insured to purchase a system which performs the same function as the one destroyed in the course of a casualty for which the insured is insured and at the same time provides for repair of the insured items which were damaged by the casualty itself .... Now, it seems to me that to permit the plaintiff to recover both for the repairs to the watercrib which is the only part of the system there that was insured, and the damage to which was in part the cause of the failure of the existing sprinkler system, to permit the insured to add to that, the cost of a replacement system, would be in substance compensating the plaintiff more than once for the same loss.

Thus, the court awarded Atlas Pallet the stipulated damages for the watercrib and foundation which it determined were covered by the SFIP.

Appellant's sprinkler system malfunctioned because it no longer had a positive head of water from which to draw. The sprinkler system required the combined action of the milldam and the watercrib: the former impounded water to supply the system and the latter stored the impounded water. After the milldam collapsed, appellant could no longer impound water to operate its sprinkler system. Thus, Atlas Pallet installed a new pump-fed fire protection system which draws water directly from the Clear River. The difference seems to be that appellant no longer needs to have a positive head of water for its sprinkler system.

Again, the SFIP protected appellant's property from "direct loss by flood." Even assuming that appellant's former sprinkler system was covered by the SFIP, we find that its present ineffectiveness is not a "direct loss by flood" and, thus, Atlas Pallet cannot recover the costs of installing the new sprinkler system. The flooding of the Clear River occasioned the collapse of the milldam which, in turn, produced the malfunctioning of the sprinkler system by reason of the fact that it lost its positive head of water. We read the term "direct loss by flood" in the SFIP to mean damage to the insured property caused directly by a flood. In this case, the failure of the sprinkler system was not caused directly by the flood but, rather, by the collapse of the dam— which, as we discussed above, was not itself covered by the SFIP. In fact, appellant conceded that the sprinkler system was not damaged directly by the flood. Appellant stated in its brief that "the watercrib functioning alone could not have been used for a sprinkler system without the dam in place. In short, the *collapse of the dam* necessitated installing a whole new kind of sprinkler system." (Emphasis added.) Presumably,

---

**5.** Because we hold that the milldam was not an addition or extension of appellant's building and, thus, not covered by the SFIP, we need not address appellees' other arguments: namely, (1) that a milldam, by its nature, cannot be flooded, and so is not covered by the SFIP, and (2) that the milldam was specifically excluded from coverage by the terms of the SFIP. On the one hand, our holding is limited to the facts of this case, and thus, we do not need to reach the broader question whether a dam, per se, is included under the coverage of a policy of insurance against flood. On the other hand, because we find that the milldam does not come under the policy definition of "covered property," we need not discuss whether it was specifically excluded from coverage.

if the milldam were still in place, Atlas Pallet would not have been required to install a new pump-fed sprinkler system. Thus, we hold that appellant cannot recover the cost of installing the new sprinkler system.

Moreover, appellant further argues that the cost of installing the new sprinkler system is recoverable under the SFIP as a "repair ... [for] the protection of the property from further damage." The SFIP provides as follows:

G. *Alterations and Repairs.*—Permission is granted to make alterations, additions and repairs, and to complete structures in the course of construction. *In the event of loss hereunder, the Insured is permitted to make reasonable repairs, temporary or permanent, provided such repairs are confined solely to the protection of the property from further damage* and provided further that the Insured shall keep an accurate record of such repair expenditures. *The cost of any such repairs directly attributable to damage by the peril insured against shall be included in determining the amount of loss hereunder.* Nothing herein contained is intended to modify the policy requirements applicable in case loss occurs, and in particular the requirement that in case loss occurs the Insured shall protect property from further damage.

SFIP, General Property Form, General Conditions and Provisions, paragraph G (emphasis added).

The question of what constitutes a repair to protect the insured property from further damage was addressed by the court in *Winkler v. Great American Insurance Co.,* 447 F.Supp. 135 (E.D.N.Y.1978). In that case, the plaintiff sought to recover (1) the cost of moving his insured beach house from its original location so that it would be possible to replace the piles on which it rested, which had allegedly been damaged by flood, and then return the house to its original site, and (2) the cost of furnishing

an adequate substructure to support the house safely in the future. In *Winkler,* the court recognized an insurer's duty to pay for the cost of protecting the insured property from further damage. The court stated that "[s]uch a duty has been implied, and it would appear reasonable to have done so here if there had been assurance that the property was moved to *avert further damage from a covered peril.*" 447 F.Supp. at 142 (emphasis added). Thus, the court denied recovery explaining that "the difficulty with plaintiff's case is that the house was not moved to protect it from an imminent risk of the peril insured against, that is, flood damage, but from the familiar and much less immediate risk of the long winter's wear on the beach ...." *Id.* Since the beach house was moved to protect it from damage which was not covered by the SFIP, the insured could not recover under the "alterations and repairs" clause of the policy.

■ We conclude that the "alterations and repairs" clause of the SFIP was intended to cover only repairs which would protect the insured building from further damage by "flood," as that term is defined in the policy. The policy insures only against "direct loss by flood." The "alterations and repairs" clause provides specifically that the cost of repairs which is recoverable under the clause is that for repairs which are "*directly attributable* to damage by the peril insured against." With the exception of the watercrib, for which compensation was granted, there was no damage to the sprinkler system. Its failure to operate was because the head of water was no longer available. Moreover, the policy specifically excludes losses by fire.[6] The installation of the new sprinkler system was made to protect appellant's building against future losses by *fire,* not flood. Thus, we hold that the cost of replacing the old sprinkler system is *not recoverable under the* "alterations and repairs" clause of the SFIP.

---

6. The policy states: "The insurer shall not be liable for losses ... by fire." SFIP, General

Property Form, Perils Excluded, paragraph D.

0

## C. *Increased Fire Insurance Costs*

■ Finally, the district court denied Atlas Pallet's claim for the increase in its fire insurance premium during the time when the sprinkler system was inoperative. Atlas Pallet argues that the increase in the premium is recoverable as a consequential loss directly attributable to the peril insured against.

Again, we disagree with appellant's reading of the policy. The SFIP clearly states that the coverage only extends to "direct loss by flood ... *to the property* ...." Moreover, Congress only extended flood insurance coverage under the National Flood Insurance Program to "loss resulting from physical damage to or loss of *real property or personal property related thereto* ...." 42 U.S.C. § 4011 (emphasis added). We believe that the type of loss insured under the SFIP does not include the kind of economic loss claimed by appellant under the rubric of "consequential damages." Instead, we conclude that the SFIP only covers physical damage to the insured building. Thus, we hold that Atlas Pallet cannot recover the increase in the cost of its fire insurance premium. It follows that in this case there can be no recovery.

*For the foregoing reasons, the decision of the district court is hereby affirmed.*