**ROCKLAND FEDERAL CREDIT UNION, Plaintiff,**

v.

**James L. WITT, Director of the Federal Emergency Management Agency, Massachusetts Property Insurance Underwriting Association, and Underwriters at Lloyd's, London, Defendants.**

**Civ. A. No. 93–11600–RCL.**

United States District Court, D. Massachusetts.

May 13, 1994.

Richard E. Gentilli, Thomas M. Looney, Kaye, Fialkow, Richmond & Rothstein, Boston, MA, for plaintiff.

Asst. U.S. Atty. Gwendolyn R. Tyre, U.S. Atty.'s Office, Boston, MA, for defendant James Witt.

Roger A. Emanuelson, LeComte, Emanuelson & Tick, Boston, MA, for Mass. Property Ins. Underwriting Assoc.

## ORDER

LINDSAY, District Judge.

Recommendation Approved.

## REPORT AND RECOMMENDATION:

### FEDERAL DEFENDANT'S MOTION TO DISMISS, OR,

### ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT

### (*DOCKET ENTRY # 11*)

BOWLER, United States Magistrate Judge.

Defendant James L. Witt, Director of the Federal Emergency Management Agency ("FEMA"), moves to dismiss this action or, in the alternative, for summary judgment. (Docket Entry # 11). Correctly construing the motion as one for summary judgment, plaintiff Rockland Federal Credit Union ("Rockland") opposes the motion. (Docket Entry # 13).

On March 18, 1994, this court held a hearing and took the motion for summary judgment (Docket Entry # 11) under advisement. (Docket Entry # 24).

### *BACKGROUND*

In September 1990, Rockland loaned Dianne Agostino $200,000, taking back a mortgage on property located at 116 Oceanside Drive in Scituate, Massachusetts ("the property"). Under the Mortgage and Security Agreement, Rockland retains the right to the proceeds of any insurance payment made to Dianne Agostino in the event the property is damaged or destroyed by "fire or other hazard." (Docket Entry # 1, Ex. A).

■ Rockland, as mortgagee, filed this declaratory judgment action against FEMA, the Massachusetts Property Insurance Underwriting Association ("MPIUA") and Lloyd's of London ("Lloyd's"). Rockland seeks a declaration as to which of three insurance policies covers property damage to the property resulting from an October 30, 1991 storm. (Docket Entry # 1, Ex. A). With regard to the specific policies, MPIUA

issued a Dwelling Policy to Dianne Agostino, as Trustee of Ocean Realty Trust. The Dwelling Policy insured the property against direct loss caused by fire or lightening, exclusive of flood loss. (Docket Entry ## 1 & 2, ¶¶ 10–11 & Ex. B). FEMA issued a Standard Flood Insurance Policy ("SFIP") to "Natale & Diane (sic) Agostino" insuring the property for physical damage caused by flood.[1] Lloyd's issued a policy insuring Rockland's mortgage interest in the property.[2] (Docket Entry # 1, Ex. C & D).

The instant motion for summary judgment concerns the issue of whether the SFIP was in effect at the time of the loss and, if so, whether Rockland, as mortgagee of the property, preserved its rights under the SFIP by timely filing a notice of loss and a proof of loss within the time period specified in the policy. For purposes of summary judgment, this court finds the following facts.

FEMA issued an SFIP to Natale and Diane Agostino ("the Agostinos") for the policy period from September 17, 1990, to September 17, 1991. The declaration page notes Rockland as the lender with respect to the property insured and the policy period. (Docket Entry ## 11–13).[3]

Rockland holds a mortgage on the property dated September 17, 1990, in the original principal amount of $200,000. Clause eight entitles Rockland to any proceeds from insurance on the property in the event of property damage or destruction caused by fire or other hazards. Although Rockland is not a named insured under the SFIP, the SFIP provides limited coverage to any mortgagee named in the declaration page for a period of "30 days after written notice to the mortgagee (or trustee) of termination of [the SFIP], and shall then terminate." (Docket Entry # 1, Ex. A & C).

In early August 1991, the NFIP mailed a renewal notice to the Agostinos. The Agostinos did not renew the SFIP. Because the SFIP states that, "The term of this policy commences on its inception date and ends on its expiration date, as shown on the Declaration Page," the policy lapsed on September 17, 1991. (Docket Entry ## 1 & 11, Ex. C).

Coverage under the SFIP nevertheless continues for a period of 30 days if FEMA receives a renewal premium payment within 30 days of the September 17, 1991 expiration date. The pertinent provision reads as follows:

> The term of this policy commences on its inception date and ends on its expiration date, as shown on the "Declaration Page"
>
> . . .
>
> This policy shall not be renewed and the coverage provided by it shall not continue into any successive policy term unless the renewal premium payment is received by us at the office of the NFIP within 30 days of the expiration date of this policy . . . In all other cases, this policy shall terminate as of the expiration date of the last policy term for which the premium payment was timely received at the office of the NFIP.

(Docket Entry # 1, Ex. C). Consequently, in this instance, the SFIP continued in effect up to October 27, 1991, if the NFIP received a

---

**1.** In accordance with the waiver of sovereign immunity contained in 42 U.S.C. § 4072, an SFIP claimant may sue the Director of FEMA in the event of a disallowance or partial disallowance of a claim for flood insurance coverage.

Under the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§ 4001 et seq., FEMA administers the National Flood Insurance Program ("NFIP") which provides flood insurance below actuarial rates to the public. "The Director of FEMA promulgates the 'terms and conditions of insurability,' 42 U.S.C. § 4013(a) (1982), which appear in the Code of Federal Regulations as administrative regulations and are subject to procedural requirements such as notice and comment." *Criger v. Becton,* 902 F.2d 1348, 1349 (8th Cir.1990). The actual language of an SFIP is uniformly set forth in the Code of Federal Regulations appearing in Appendix A(1) of 44 C.F.R., Part 61. *Criger v. Becton,* 902 F.2d at 1350 n. 1. Consequently, the meaning and effect of an SFIP will depend upon the meaning and effect of the Congressional legislation. *Chesapeake Ship Propeller Company v. Stickney,* 820 F.Supp. 995, 997 (E.D.Va.1993).

**2.** On October 21, 1993, Rockland filed a notice voluntarily dismissing Lloyd's without prejudice under Rule 41(a)(1)(i), Fed.R.Civ.P. (Docket Entry # 6).

**3.** "Docket Entry # 11" ordinarily refers to the Affidavit of Karen Voglezon contained therein. "Docket Entry ## 12 & 13" ordinarily refers to the respective statements of undisputed material facts contained therein.

renewal premium payment within this time period. The NFIP did not receive a renewal premium payment by October 27, 1991. (Docket Entry ## 1 & 11, Ex. C). The above provision is therefore inapplicable to the case at bar.

More importantly, the SFIP further provides that, with respect to a mortgagee, coverage will continue for a period of 30 days after notice to the mortgagee of the policy's termination. The pertinent language of paragraph G states that:

> [W]ith respect to any mortgagee (or trustee) named in the declarations form attached to this policy, this insurance shall continue in force only for the benefit of such mortgagee (or trustee) for 30 days after written notice to the mortgagee (or trustee) of termination of this policy, and shall then terminate.

Accordingly, Rockland's interest in the property was protected for a period of "30 days after written notice [to Rockland] of termination of" the SFIP.

On September 27, 1991, FEMA mailed an expiration notice to the Agostinos and to Rockland. The September 27, 1991 notice constitutes the requisite "written notice to the mortgagee" of the policy's termination within the meaning of paragraph G. The notice states that the policy expired on September 17, 1991. Rockland received the notice of expiration on October 7, 1991. The loss to the property occurred on October 30, 1991. (Docket Entry ## 11–14 & Ex. A).

Depending on whether the 30 day period begins to run when FEMA mails the expiration notice or when the mortgagee (Rockland) receives the notice, the SFIP expired with respect to Rockland's interest either on October 27, 1991 (30 days after the time of mailing) or on November 6, 1991 (30 days after the time of receipt). Rockland understandably argues in favor of the latter construction while FEMA urges this court to apply the former construction. Solely for purposes of FEMA's motion for summary judgment, this court will assume, without deciding, that the latter construction applies, i.e., that the SFIP was in effect *only* for the benefit of Rockland up to and including November 6, 1991. Accordingly, Rockland's in-

terest was covered under the SFIP at the time of the October 30, 1991 storm.

In order to properly submit a claim under the SFIP, the insureds (the Agostinos) must notify FEMA "as soon as practicable" in the event of a flood loss. The insureds must also send FEMA a "proof of loss" within 60 days after the loss. The SFIP outlines the specific content of the proof of loss. The proof of loss must be signed and sworn. In addition, it should note the date of the loss, the insureds' interest in the property, the actual cash value of the damaged items, the names of any entity having a lien on the property, including any mortgagee, the amount of the claim allegedly due and certain details regarding any changes to the property and/or other insurance covering the property. (Docket Entry # 1, Ex. C, ¶ I; Docket Entry # 15).

Although the Agostinos notified FEMA of the loss, there is no evidence that the Agostinos submitted a proof of loss within 60 days of the October 30, 1991 storm, if at all. Specifically, on November 13, 1991, the Agostinos, through their attorney at the time, Attorney Michael V. Morisi ("Attorney Morisi"), mailed a notice of loss to FEMA. The notice neither mentions nor refers to Rockland. FEMA received the notice on November 15, 1991. (Docket Entry # 14, Ex. A & B).

Because the SFIP had expired on September 17, 1991, at least with respect to the Agostinos' interest, by letter dated November 25, 1991, FEMA advised the Agostinos in no uncertain terms as follows:

> Your policy expired on September 17, 1991 and was not renewed. Therefore, there was no coverage in force on the date of the loss and no payment can be made to you.

FEMA also sent a copy of the November 25, 1991 letter to Rockland. (Docket Entry # 15, Ex. B).

In the event the insureds (the Agostinos) fail to submit a proof of loss, as in the case at bar, the mortgagee may still protect its interest under the SFIP. Paragraph P of the SFIP outlines the duties of the mortgagee if the insureds fail to render a proof of loss.

**P. Mortgagee Obligations:** If the insured fails to render proof of loss, the named mortgagee (or trustee) upon notice, shall render proof of loss in the form herein specified within 60 days thereafter and shall be subject to the provisions of this policy relating to appraisal and time of payment and of bringing suit.

(Docket Entry # 1, Ex. C). Thus, under the SFIP and "upon notice" (presumably of the insured's failure to render proof of loss), Rockland had 60 days to submit a proof of loss in the form specified in the SFIP. A determinative issue is therefore what constitutes "upon notice" to Rockland thereby triggering the running of the 60 day period.[4]

On April 2, 1992, Rockland, through Attorney Morisi, sent FEMA a letter entitled "Mortgagee's Notice of Loss." Therein, Attorney Morisi referred to the 30 day grace period with respect to a mortgagee under paragraph G and stated that the SFIP was therefore in effect at the time of the October 30 1991 storm. FEMA received Rockland's notice of loss on April 6, 1992. (Docket Entry # 15, Ex. C).

Reserving its rights, by letter dated April 23, 1992, FEMA informed Attorney Morisi that it would consider the claim "provided that the applicable terms and conditions of the policy are met." The letter further requested that Attorney Morisi submit the amount of the mortgagee's interest on the date of the loss (October 30, 1991) and the names and amounts of interest regarding any other outstanding mortgagees. (Docket Entry # 15, Ex. D).

Attorney Morisi avers that "it is very likely" that he received the April 25, 1992 letter "on May 7, 1992, or one or two days before." Attorney Morisi, acting on behalf of Rockland, did not submit the requested information until June 24, 1992. By letter dated June 24, 1992, Attorney Morisi sent FEMA the November 13, 1991 notice of loss with respect to the Agostinos, the April 2, 1992 notice of loss with respect to Rockland and a signed and sworn affidavit detailing Rockland's interest in the property as mortgagee.

The affidavit depicts that, as of October 30, 1991, the Agostinos owed Rockland $205,848.70 under the mortgage. (Docket Entry ## 15 & 16, Ex. E).

Rockland contends that the June 24, 1992 submission constituted its proof of loss under the SFIP. (Docket Entry # 13). Again, this court will assume *arguendo*, for purposes of FEMA's motion for summary judgment only, that Rockland's June 24, 1992 submission constituted the requisite proof of loss as defined in the SFIP.

By letter dated July 22, 1992, FEMA informed Attorney Morisi that it would not make a payment to Rockland, as mortgagee, under the SFIP. Referring to paragraph O of the SFIP, FEMA explained that when written notice of the cancellation was forwarded to Rockland, as mortgagee, the SFIP remained in force for Rockland's benefit "for 30 days after the date of the written notice." Because FEMA had sent a carbon copy of its November 25, 1991 denial letter to Rockland, Rockland's April 2, 1992 notice of loss was untimely. FEMA therefore denied the claim. (Docket Entry # 17, Ex. A).

Paragraph O, which applies to "building coverage" and in the event FEMA has actual notice of the mortgagee prior to the payment of loss proceeds, states that:

> If this policy is canceled by the Insurer, it shall continue in force for the benefit only of the mortgagee (or trustee) for 30 days after written notice to the mortgagee (or trustee) of such cancellation and shall then cease.

(Docket Entry # 1, Ex. C). Although paragraph G is phrased in terms of a termination rather than a cancellation, paragraph O tracks the language of paragraph G. Both paragraphs indicate that the SFIP will continue only for the benefit of the mortgagee for a 30 day period after cancellation by the insurer or termination after nonrenewal by the insured.

---

4. FEMA argues that Rockland had notice through the September 27 and November 25, 1991 letters. Rockland, however, contends that it did not have notice until its receipt of a letter dated April 23, 1992.

## DISCUSSION

FEMA moves for summary judgment, in part, on the grounds that Rockland failed to submit a timely proof of loss within 60 days as required under paragraph P of the SFIP. (Docket Entry ## 11, 12 & 23). In construing the policy, FEMA asserts that Rockland had "notice" of the Agostinos' failure to render proof of loss on two occasions. (Docket Entry # 23). First, on October 7, 1991, Rockland received FEMA's expiration notice. The expiration notice states that, "This flood insurance policy expired on September 17, 1991." (Docket Entry # 14, Ex. A). Second, FEMA points out that by letter dated November 25, 1991, with a carbon copy sent to Rockland, FEMA notified the Agostinos that it would not be processing their claim. The November 25, 1991 letter reiterates that the policy expired on September 17, 1991 and was not renewed. Hence, there was no coverage on the date of loss. (Docket Entry # 15, Ex. B).

In reply, Rockland submits that the pertinent notice is found in FEMA's April 23, 1992 letter. FEMA presumably sent this correspondence to Attorney Morisi, Rockland's attorney at the time, on or around April 23, 1992. Attorney Morisi avers, however, that he most likely received this letter on or around May 7, 1992. Rockland therefore argues that its June 24, 1992 proof of loss was timely filed within 60 days of receipt of the April 23, 1992 letter. (Docket Entry # 13).

Accordingly, the pertinent inquiry is to determine whether the September 27, 1991, the November 25, 1991 and/or the April 23, 1992 letters constitute the requisite notice to Rockland thereby triggering the 60 day period noted in paragraph P. In addition, if the April 23, 1992 letter is the pertinent document, it becomes necessary to determine whether the 60 day period begins to run on the date FEMA sent the April 23, 1992 letter or on the date Attorney Morisi received the April 23, 1992 letter. Rockland's submission of its proof of loss on June 24, 1992 is timely only under the latter construction.

Summary judgment is permissible when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of Rockland, the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991).

Construction of an insurance contract is generally a question of law. *Sodowski v. National Flood Insurance Program*, 834 F.2d 653, 655 (7th Cir.1987), *cert. den.*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988) (citing *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 134 (1st Cir.1984)). Federal common law "controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Program." *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d at 135. Congress, however, did not intend to abrogate standard principles of insurance law which therefore apply to interpreting an SFIP. *See Sodowski v. National Flood Insurance Program*, 834 F.2d at 655; *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d at 135. Furthermore, inasmuch as an insurance policy constitutes a contract, "basic contract rules govern the interpretation of" terms in an SFIP. *See Atlas Pallet, Inc. v. Gallagher*, 725 F.2d at 135.

One such principle relevant to the case at bar "is that, 'if language of a policy is clear and unambiguous, it should be accorded its natural meaning.'" *Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d 1011, 1013 (5th Cir.1984). Where the meaning of terms in an insurance policy is unclear or doubtful, however, an insurance policy is ordinarily construed in favor of the insured. *Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d at 1013; *Eagle Pitcher Industries, Inc. v. Liberty Mutual Insurance*, 682 F.2d 12, 17 (1st Cir.1982), *cert. den.*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983).

The pertinent terms at issue in this case are located in paragraph P. First, the language states that the mortgagee "shall *render* proof of loss in the form herein specified within 60 days." (Docket Entry # 1, Ex. C; emphasis added). Rockland notes that it is not necessary that FEMA receive the proof of loss within 60 days after notice to

the mortgagee. While not pertinent to this court's resolution of the instant motion, this court agrees. The obligation speaks in terms of Rockland rendering a proof of loss. It is silent with respect to FEMA's receipt of the proof of loss. Second, the language "in the form herein specified" undoubtedly refers to paragraph I which depicts the content of a proof of loss statement. With respect to the insured's obligation to furnish proof of loss within 60 days, paragraph I(3) parallels paragraph P insofar as it states that the insured must "[w]ithin 60 days after the loss, *send* us proof of loss...." (Docket Entry #1, Ex. C; emphasis added). Consequently, all that is required of the mortgagee is to render or send proof of loss within the 60 day period described in paragraph P. FEMA's receipt is not required.

■ The critical inquiry in resolving the motion for summary judgment, however, is to determine what constituted "notice" to Rockland that the Agostinos failed to render proof of loss thereby triggering the running of the 60 day period. By letter dated November 13, 1991, the Agostinos, through their attorney, submitted a notice of loss. By letter dated November 25, 1991, FEMA unequivocally denied the Agostinos' claim. The November 25, 1991 letter reiterates FEMA's earlier position set forth in its September 27, 1991 letter. Both letters denied the Agostinos' claim because the policy expired on September 17, 1991. Rockland admittedly received the September 27, 1991 letter and FEMA sent a carbon copy of the November 25, 1991 letter to Rockland.

No reasonable person could interpret the November 25, 1991 letter (as well as the September 27, 1991 letter) as anything but an indication that the Agostinos would not be filing a proof of loss. *See Nunnery v. Insurance Companies of National Flood Insurers,* 414 F.Supp. 973, 974 (N.D.Miss.1976) (summary judgment allowed inasmuch as no rea-

sonable person could interpret the NFIA letter as anything but a clear denial of the flood insurance claim). In the November 25, 1991 letter, FEMA rejected the Agostinos' attempt to file a notice of loss. The next step, i.e., filing a proof of loss, would therefore be futile. Stated otherwise, it would be unreasonable to conclude that the Agostinos would be filing a proof of loss under such circumstances. Therefore, Rockland was on notice that the Agostinos would not be filing a proof of loss in or around late November 1991. The 60 day period expired no later than early February 1992. Rockland's June 1992 proof of loss is therefore untimely.

■ Nor will this court excuse Rockland's failure to file a timely proof of loss on the basis that FEMA decided to consider Rockland's claim by letter dated April 23, 1992. First, FEMA expressly reserved its rights and defenses in the letter thereby precluding any reasonable reliance on the letter on the part of Rockland.

Second, complying with the 60 day proof of loss provision is a precondition to filing suit. Paragraph Q of the SFIP provides that a claimant must comply with all the requirements of the SFIP as a precondition to filing suit. It reads as follows:

> **Q. Conditions for Filing Lawsuit:** You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.

(Docket Entry #1, Ex. C).

In construing a corresponding paragraph and a corresponding paragraph pertaining to the 60 day submission of proof of loss in the 1979 version of the SFIP, the First Circuit unequivocally rejected the plaintiffs' estoppel arguments in *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13, 16 (1st Cir.1986);[5] *see generally West Augusta Development Corporation v. Giuffrida,* 717 F.2d 139, 140 n. 3 (4th Cir.1983) (noting that the

---

**5.** In *Phelps,* despite the fact that the agent represented to the plaintiffs that FEMA would conduct an investigation without requiring the submission of a proof of loss and the plaintiffs' reasonably relied on this representation to their detriment, the First Circuit refused to apply the estoppel doctrine against the government. *Phelps v. Federal Emergency Management Agency,* 785 F.2d

at 19. Absent an effective waiver on the part of FEMA, the plaintiffs' failure to file a proof of loss within 60 days in *Phelps* barred their recovery under the SFIP. Finding no such waiver, the First Circuit reversed the lower court. *Phelps v. Federal Emergency Management Agency,* 785 F.2d at 19.

rule prohibiting estoppel against the government was in flux and collecting cases). Similarly, in *Cross Queen, Inc.v. Director, Federal Emergency Management Agency*, the court determined that the fact that FEMA considered plaintiff's untimely proof did not constitute a waiver of the 60 day time period within which to file proof of loss under the SFIP. In enforcing the 60 day requirement, the court declared that the waiver doctrine was inapplicable "where the insurer is an agency of the United States" and further stated that "courts have almost invariably denied recovery where the claimant failed to comply with the proof of loss requirements found in insurance policies issued under federal programs." *Cross Queen, Inc. v. Director, Federal Emergency Management Agency*, 516 F.Supp. 806, 809 (D.V.I.1980) (collecting cases).

In sum, the 60 day period ran upon notice to Rockland of the insureds' failure to render proof of loss. This occurred no later than early February 1992. Hence, Rockland's June 1992 proof of loss is untimely thereby barring its recovery under the SFIP. The SFIP was not in effect at the time of the loss either with respect to the insured's interest or Rockland's interest. Summary judgment dismissing FEMA as a party and counts II and IV insofar as such counts apply to FEMA is therefore appropriate.

### CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[6] that FEMA's motion for summary judgment (Docket Entry # 11) be **ALLOWED.**

---

6. Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).