Bank of NH v. FEMA                    CV-95-254-JD  02/16/96

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Bank of New Hampshire

    v.                                    Civil NO. 95-254-JD

Federal Emergency Management
Agency, et al.


O R D E R


The plaintiff, Bank of New Hampshire, brought this action asserting breach of contract, negligence, and estoppel and seeking, inter alia, a declaration regarding the defendants' obligations under a flood insurance policy.[1]  Before the court are the defendants' motions for summary judgment (document nos. 6 and 12).[2]

---

[1]The plaintiff alleged in its complaint that jurisdiction was conferred under the Declaratory Judgment Act and 28 U.S.C. § 1346, the United States' waiver of sovereign immunity for actions sounding in contract, id. § 1346(a)(2), and actions sounding in tort, id. § 1346(b).  Without amending its complaint, the plaintiff also has argued that jurisdiction is predicated on section 1341 of the National Flood Insurance Act of 1968, 42 U.S.C. § 4072.

[2]By order of January 9, 1996, the court expressed its intention to convert the pending motions to dismiss into motions for summary judgment.  As neither party objected to the court's stated intention, the court considers the current motions under Rule 56.

Background[3]

A.  The Flood

The plaintiff is the first mortgagee of property owned by Robert P. Mitchell, Sr. and Kathleen Greer (the "homeowners") in Barnstead, New Hampshire.  The property is covered by a standard flood insurance policy ("SFIP") issued by the defendants.[4]

According to the defendants, the policy was scheduled to lapse on October 27, 1993.  The defendants have submitted evidence indicating that a renewal notice was sent to the plaintiff, the homeowners, and the homeowners' insurance company forty-five days prior to the policy's expiration date, and that a notice of expiration was sent to these parties on October 27, 1993.  Declaration of James S.P. Shortley ¶ 3.  The plaintiff

_____

[3]Unless otherwise noted, the court's recitation of the facts relevant to the instant motion are either not in dispute or have been alleged by the plaintiff.

[4]By executive order, the Federal Emergency Management Agency ("FEMA") has been charged with administration of the National Flood Insurance Program ("NFIP"), which originally was created in 1968 as a joint venture between the federal government and the private insurance industry.  See 42 U.S.C.A. § 4001 (West 1994). Today, FEMA issues and services NFIP flood insurance plans through one of its subdivisions, the National Insurance Agency ("NIA").  As authorized by statute, the NIA contracts with private servicing agents, including Computer Science Corporation, which serviced the policy in question prior to October 1993, and defendant National Con-Serv, which serviced the policy thereafter.  See 42 U.S.C.A. § 4081 (West 1994); 44 C.F.R. § 62.3 (1993 & 1994).

2

alleges that it received neither of these notices. Complaint ¶¶ 17-18.

On or about October 25, 1993, the homeowners informed the plaintiff that a renewal premium was due on the policy. Id. ¶ 13. Constance Hamel, a customer service representative for the plaintiff, subsequently prepared a treasurer's check dated November 4, 1993, and sent it via first-class mail to NFIP as payment for the premium. Affidavit of Constance Hamel, October 3, 1995 ("Second Hamel Affidavit") ¶ 4.

On January 21, 1994, a flood damaged the homeowners' real and personal property. Hamel was informed of the flood and contacted Laurie Michie, an NFIP assistant project director, who notified Hamel that no renewal payment had been received and that the policy had lapsed. Affidavit of Constance Hamel, August 22, 1995 ("First Hamel Affidavit") ¶¶ 3-4. Michie suggested that the plaintiff issue a second check and send a letter of appeal to the NFIP. Id. ¶ 4. On January 27, 1994, Hamel sent NFIP a copy of the treasurer's check dated November 4, 1993. In an accompanying letter Hamel again requested coverage under the policy and suggested that the original copy of the check had been lost in the mail. On February 9, 1994, Michie contacted Hamel, requesting additional information about the renewal payment and informing Hamel that NFIP was sending a new application form to

3

the homeowners' insurance agent.  Hamel Affidavit ¶ 5.[5]  There is no indication in the record that the defendants reimbursed the homeowners or took further action on the request for coverage under the policy.

The homeowners filed a state court action against the plaintiff seeking to recover damages resulting from the flood and from the cancellation of the policy.  The plaintiff subsequently filed the instant action to determine the existence of coverage under the policy.

B.  The Policy

The policy relevant to this action, which is published at 44 C.F.R. Pt. 61 App. A(1) (1993), names the homeowners as insured parties and the plaintiff as a mortgagee.[6]  Article VIII, paragraph G governs renewal of the policy:

> The term of this policy commences on its inception date
> and ends on its expiration date . . . .  We are under

---

[5]According to the defendants, a "subsequent policy was established" on the property, with coverage beginning on January 30, 1994.  Shortley Affidavit ¶ 6.

[6]Although the plaintiff alleged in its complaint that it is a named insured under the policy, its subsequent submissions indicate that it is a named mortgagee.  The court notes that the policy expressly insures both named beneficiaries and "[a]ny mortgagee . . . named in the application and declaration page." SFIP Art. I.

4

no obligation to send you[7] any renewal notice or other notice that your policy term is coming to an end and the receipt of any such notice by you shall not be deemed to be a waiver of this provision on our part.

> This policy shall not be renewed and the coverage provided by it shall not continue into any successive policy term unless the renewal premium payment is received by us at the office of the NFIP within 30 days of the expiration date of this policy . . . . If the renewal premium payment is mailed by certified mail to the NFIP prior to the expiration date, it shall be deemed to have been received within the required 30 days. . . . In all other cases, this policy shall terminate as of the expiration date of the last policy term for which the premium payment was timely received at the office of the NFIP, and in that event, we shall not be obligated to provide you with any cancellation, termination, policy lapse, or policy renewal notice . . .; provided, however, with respect to any mortgagee (or trustee) named in the declarations form attached to this policy, this insurance shall continue in force only for the benefit of such mortgagee (or trustee) for thirty days after written notice to the mortgagee (or trustee) of termination of this policy, and shall then terminate.

Paragraph O tracks the terms of paragraph G as they relate to mortgagees:

> If this policy is cancelled by the insurer, it shall continue in force for the benefit only of the mortgagee (or trustee) for 30 days after written notice to the mortgagee (or trustee) of such cancellation and shall then cease, and the Insurer shall have the right, on like notice, to cancel this agreement.

Paragraph I sets forth the obligations of the insured in case of loss:

---

[7]As used in the policy, the terms "you" and "your" are references to the insured party.

Should a flood loss occur to your insured property, you must:

    1.  Notify us in writing as soon as practicable;

    . . .

    3.  Within 60 days after the loss, send us a proof of loss, which is your statement as to the amount you are claiming under the policy signed and sworn to by you . . . .

In the event that the insured fails to provide proof of loss, paragraph P provides that

the named mortgagee (or trustee) upon notice, shall render proof of loss in the form herein specified within 60 days thereafter and shall be subject to the provisions of this policy relating to appraisal and time of payment and of bringing suit.

Paragraph Q governs the conditions for filing a lawsuit for recovery under the policy:

You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.  If you do sue, you must start the suit within twelve (12) months from the date we mailed you notice that we have denied your claim, or part of your claim, and you must file the suit in the United States District Court for [sic] district in which the insured property was located at the time of the loss.

## Discussion

As a preliminary matter, the court must address the questions of what law governs and what remedies are available to the plaintiff in the instant action.  As to the first question, the court notes that because "[t]he purpose of the National Flood

6

Insurance Program is to provide flood insurance on a uniform nationwide basis," federal law governs interpretation of the policy at issue. Davis v. Witt, 873 F. Supp. 223, 225 (E.D. Mo. 1995); see also Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 134 (1st Cir. 1984). In addition, any requirements that state law imposes upon insurance carriers in general do not apply to the instant policy.[8] See Davis, 873 F. Supp. at 226-27. Accordingly, the court does not consider the plaintiff's claims or arguments to the extent that they are based on New Hampshire law.

The court also notes that the plaintiff's request for relief under the state declaratory judgment act, N.H. Rev. Stat. Ann. ("RSA") § 491:22, is inappropriate. State law remedies are

---

[8]The plaintiff has argued that state regulation of the SFIP at issue is consistent with section 2(b) the McCarran-Ferguson Act, which provides in pertinent part:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such insurance, unless such act specifically relates to the business of insurance.

15 U.S.C.A. § 1012(b) (1976). The argument is without merit because the National Flood Insurance Act, 42 U.S.C. § 4001 et seq., which governs the SFIP in question, clearly "specifically relates" to flood insurance. Cf. Fenton v. Federal Ins. Adm'r, 633 F.2d 1119, 1125 (5th Cir. Jan. 1981) (award of attorneys' fees based on state law not available in suit on policy issued under Federal Crime Insurance Act where act established insurance scheme operated by federal government).

available in federal actions in which jurisdiction is founded on diversity of citizenship. E.g., Titan Holdings Syndicate, Inc. v. City of Keene, N.H., 898 F.2d 265, 273 (1st Cir. 1990) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938)). However, since jurisdiction in this case is not based on diversity, state law remedies are not available. Thus, the court considers the plaintiff's request for declaratory relief under federal law, and proceeds to the defendant's dispositive motions.

The role of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992), cert. denied, 113 S. Ct. 1845 (1993)), cert. denied, 115 S. Ct. 56 (1994). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v.

8

<u>Aponte-Roque</u>, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the plaintiff, "`indulging all reasonable inferences in that party's favor.'" <u>Mesnick v. General Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990)), <u>cert. denied</u>, 504 U.S. 985 (1992). However, once the defendant has submitted a properly supported motion for summary judgment, the plaintiff "may not rest upon mere allegation or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

A. <u>Plaintiff's Claims Under the Policy</u>

The defendants argue, <u>inter alia</u>, that the plaintiff is not entitled to any relief under the policy because the plaintiff has not complied in full with the policy's requirements, as mandated by paragraph Q. The defendants point to the plaintiff's failure to meet paragraph P's requirement that a mortgagee render proof of loss within sixty days of its notice of a named insured's failure to do so. The plaintiff responds that it never was obligated to render proof of loss because FEMA never notified it that the plaintiff had not done so.

9

Paragraph P is silent as to whether FEMA must notify a named mortgagee of an insured party's failure to render proof of loss. However, the court finds persuasive an opinion from this circuit indicating that a mortgagee's constructive knowledge of an insured party's failure to file proof of loss triggers paragraph P's 60-day filing requirement. In Rockland Federal Credit Union v. Witt, 853 F. Supp. 14 (D. Mass. 1994), a mortgagee sought to recover on a flood insurance policy issued in favor of two homeowners. Although FEMA had denied the homeowners' request for coverage on the ground that their coverage had lapsed at the time the property was damaged, the mortgagee claimed that the policy was in effect for its benefit at the time of the loss. On the defendant's motion for summary judgment, the court held that the mortgagee's claim was barred by its failure to file proof of loss in a timely manner. The court ruled that the sixty-day period began at time the mortgagee knew or should have known that the homeowners would not be filing proof of loss, in this case upon the mortgagee's receipt from FEMA of copies of letters indicating that the homeowners' request for coverage had been denied because their coverage had lapsed. Id. at 20. But see LaSalle Nat'l Bank v. FEMA, No. 84-C-9066, slip op. at 7 n.5 (N.D. Ill. July 29, 1985) (suggesting that FEMA has an affirmative obligation to

10

inform a mortgagee of a named insured's failure to file proof of loss).

The plaintiff has alleged that it paid the premium on the policy for 1993-94 and on the date of the flood contacted FEMA seeking coverage under the policy. Having undertaken these efforts on behalf of the homeowners and as a mortgagee with an obligation to protect own its interest, the plaintiff cannot now claim that it had no reason to know that the homeowners had sixty days after the date of the flood to render proof of loss in accordance with paragraph I of the policy, or that the homeowners failed to file any proof of loss during this sixty-day period.[9] Cf. Restatement (Second) of Agency § 9(1) & cmt. d (1958).[10] The court finds that the 60-day period in which the plaintiff was

---

[9]The court notes that nowhere in its responses to the defendants' motions has the plaintiff argued that it was not aware of the terms of the policy or of its obligations thereunder. Rather, the plaintiff has rested its argument solely on its assertion that it never received notice from FEMA of the homeowners' failure to render proof of loss.

[10]Comment d of the Second Restatement of Agency provides that a person has reason to know, and thus notice, of a fact

> if he has information from which a person of ordinary intelligence, or of the superior intelligence which such person may have, would infer that the fact in question exists or that there is such a substantial chance of its existence that, if exercising reasonable care with reference to the matter in question, his action would be predicated upon the assumption of its possible existence.

11

required to render proof of loss began on March 22, 1994, 60 days after the flood, and ended 60 days thereafter. There being no dispute that the plaintiff failed to submit proof of loss at any time within this period or at any time thereafter, the court concludes that the plaintiff failed to comply with the express requirements of the SFIP.[11]

The only remaining question is whether the defendants are equitably estopped from asserting or have waived the proof of loss defense. To the extent that the plaintiff has made either of these arguments through the affidavits of Constance Hamel,[12] who testified that an NFIP agent instructed her over the telephone to send another check to cover the renewal premium and to file a letter of appeal, the court finds the claim to be barred by the First Circuit's holding in Phelps v. FEMA, 785 F.2d 13 (1st Cir. 1986). In Phelps, the court ruled that absent a written waiver, a policyholder's reliance on FEMA agents' assurances that it was not necessary to file proof of loss could

---

[11]It is not without significance that the plaintiff has failed to file the required proof of loss right up to the present time. Such action, albeit late, might have provided the plaintiff with a stronger basis for its claim.

[12]In its complaint, the plaintiff asserted equitable estoppel as an independent theory of recovery under the policy. However, the plaintiff based its theory of estoppel solely on its allegations that the defendants had made representations concerning their obligation to issue notice of the policy's expiration. Complaint ¶¶ 27-31.

12

not excuse the policyholder's failure to render such proof.  Id.
at 19.  Here, the plaintiff has adduced no evidence, either from
Hamel's affidavits or any other source, indicating that FEMA
executed a written waiver of the proof of loss requirement.
Thus, the court grants the defendants' motion for summary
judgment on the all of the plaintiff's claims seeking relief
under the SFIP, whether they are framed as actions under 42
U.S.C. § 4072, or for breach of contract or estoppel under 28
U.S.C. § 1346(a)(2).[13]

B.  Plaintiff's Negligence Claim

The defendants advanced several arguments to support their
motion to dismiss the plaintiff's negligence claim under the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  The court
need only address one.

The FTCA does not apply to claims that are founded upon an
alleged failure to perform contractual obligations.  E.g., Davis
v. United States, 961 F.2d 53, 56 (5th Cir. 1991) (breach of non-

---

[13]The court does not reach the issues of whether the
defendants failed to provide notice of the policy's expiration or
whether the policy was in fact renewed.  However, the court notes
that the plaintiff has mistakenly relied on 42 U.S.C. § 4104a(c)
to support its claim that FEMA was required to send a renewal
notice 45 days prior to the policy's expiration.  That provision,
which was enacted on September 23, 1994, was not effective in
September 1993, when the statutory obligation to inform the
plaintiff of the policy's expiration would have accrued.

assignment clause of promissory note by FDIC did not constitute tort); see also Haney v. Castle Meadows, Inc., 868 F. Supp. 1233, 1237 (D. Colo. 1994) (allowing such claims would "destroy the distinction between contract and tort claims and render illusory the separation of tort claims under [28 U.S.C. § 1346(a)(2)] and contract claims under [28 U.S.C. § 1346(b)]"). The plaintiff has based its theory of negligence on the defendants' failure either to provide notice of the policy's expiration or to provide coverage. Complaint ¶¶ 38-43.[14] These duties arise solely from contractual provisions and thus are not cognizable under the FTCA. The plaintiff's negligence claim therefore fails.

## Conclusion

The defendants' motion for summary judgment (document no. 6), to which all the defendants have joined, is granted on all counts. The defendants' second motion to dismiss (document no. 12) and defendant Con-Serv, Inc.'s request for joinder in this

---

[14]The plaintiff also has alleged that the defendants' breach of its statutory duties to provide renewal and cancellation notices constitutes negligence. Complaint ¶¶ 39-40. Having found the statutory requirements cited by the plaintiff not to be applicable to the SFIP at issue, the court need not consider whether such violations are actionable under the FTCA.

motion (document no. 18) are moot.  The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

February 16, 1996

cc:  Daniel E. Lyford, Esquire
     T. David Plourde, Esquire
     R. Matthew Cairns, Esquire

15